1

R. David Hosp
ORRICK, HERRINGTON & SUTCLIFFE, LLP

2

222 Berkeley St. Ste 2000

3

Boston, MA  02116
Telephone: (617) 880-1886

4

Facsimile: (617) 880-1801
Email: dhosp@orrick.com

5

6

Paige Pavone
ORRICK, HERRINGTON & SUTCLIFFE, LLP

7

51 West 52nd Street
New York, NY  10019

8

Telephone: (212) 506-3604
Facsimile: (212) 506-5151

9

Email: ppavone@orrick.com

10

11

*Attorneys for Plaintiffs*

12

13

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

14

15

FRANKLIN GOMEZ CARRANZA and
RUBEN TORRES JAUREGUI,

16

17

    Plaintiffs,

18

    v.

19

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; MATTHEW T.

20

ALBENCE, ACTING DIRECTOR OF ICE;
DEPARTMENT OF HOMELAND

21

SECURITY; CHAD F. WOLF, ACTING

22

SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY; COREY A. PRICE,

23

FIELD OFFICE DIRECTOR FOR THE EL
PASO FIELD OFFICE,

24

25

Defendants.

26

27

Case No. 20cv424

**COMPLAINT**

**PROPOSED CLASS ACTION**

# INTRODUCTION

1.      This is a class action for injunctive and declaratory relief necessary to remedy ongoing violations of the constitutional and statutory rights of individuals held in government custody pending immigration proceedings.  Because such proceedings seek to deprive individuals of the opportunity to live and work in the United States, the United States Constitution and federal statutes and regulations afford these individuals with substantive and procedural rights, including the right to be represented by counsel, the right to gather and present evidence, and the right to a fair hearing.  Defendants have systematically denied those rights, and others.

2.      Plaintiffs Franklin Gomez Carranza and Ruben Torres Jauregui ("Individual Plaintiffs") bring this class action lawsuit to challenge policies and practices that deny and severely restrict their abilities to make telephone calls necessary to consult with or obtain counsel, to gather information and evidence necessary for their cases, and to obtain fair hearings while in civil, immigration custody.

3.      Individual Plaintiffs and the class they seek to represent (collectively "Plaintiffs") are held in detention facilities under the custody of Defendant U.S. Immigration and Customs Enforcement ("ICE"), many pending resolution of ICE's charges that they should be deported or "removed" from the United States.  Others are detained while challenging final removal orders or their prolonged detention, while motions to reopen or reconsider a prior removal order are pending, and while pursuing habeas corpus petitions because they cannot be deported.

4.      Respondents in immigration proceedings are not entitled to appointed counsel, but have a right to counsel of their choosing at no expense to the government.  Individuals detained at the El Paso Service Processing Center ("El Paso") and the Otero County Detention Processing Center ("Otero") rely on *pro bono* counsel located nationwide for representation.  In-person visits by out-of-state counsel to El Paso or Otero often are prohibitively expensive and unreasonably time-consuming.  In-person visits by any counsel – including local attorneys – have been rendered impossible with the COVID-19-related shutdowns.  Even before these

shutdowns, visits by local counsel were extremely time-consuming because attorneys cannot make appointments to see their clients at El Paso or Otero.  Thus, telephone access is critical to Plaintiffs' ability to locate, retain, consult with, and seek advice from legal counsel.

5.    For those Plaintiffs who cannot afford an attorney and are not able to retain *pro bono* counsel, telephone contact with the outside world is essential to gather the evidence and government documents necessary to defend against removal charges, locate witnesses, seek relief from removal, including protection from persecution or torture, and do other things necessary to represent themselves in legal proceedings.

6.    Meaningful telephone access is also necessary to enable Plaintiffs to exercise their First Amendment rights to petition government agencies for affirmative immigration benefits and related documentation, including ones that may legalize their status or otherwise assist with their applications for relief or protection from removal.

7.    However, ICE, and its parent agency, the Department of Homeland Security ("DHS") have engaged in a common course of conduct that severely restricts Plaintiffs' telephone access in violation of their constitutional, statutory, and regulatory rights under, *inter alia*, the United States Constitution, the Immigration and Nationality Act ("INA"), and the Administrative Procedures Act ("APA").  Specifically, and as elaborated herein, Defendants have illegally restricted Plaintiffs' telephone access in the following ways:

    a.    impeding all confidential communications with counsel, depriving Plaintiffs of the attorney-client privilege;

    b.    providing no privacy to Plaintiffs when able to make telephone calls;

    c.    when made available, only providing calling options that are prohibitively expensive;

    d.    not providing free telephone access to indigent Plaintiffs;

    e.    not providing Plaintiffs free telephone access to make calls to nonprofit legal services providers and/or government entities;

f.  disallowing Plaintiffs from receiving incoming calls, including urgent legal calls from counsel or other emergency telephone calls;

g.  not taking and delivering messages to Plaintiffs;

h.  inconsistently conveying requests from counsel to speak with their detained clients;

i.  when made available, providing telephone access that denies Plaintiffs the ability to leave voicemail messages or reach offices with automated reception services;

j.  not providing information on telephone access to Plaintiffs who speak rare languages;

k.  refusing to assist Plaintiffs who have trouble accessing the telephones; and

l.  when made available, providing meaningless telephone access replete with poor sound quality and excessive background noise.

8.  By engaging in the above conduct, Defendants have violated Plaintiffs':

a.  constitutional right to counsel, as provided for in the Due Process Clause of the Fifth Amendment;

b.  statutory right to counsel at no expense to the government in immigration proceedings, as provided for in 8 U.S.C. §§ 1362 and 1229a(b)(4)(A) of the Immigration and Nationality Act and 5 U.S.C. § 555(b) of the Administrative Procedure Act;

c.  regulatory right to counsel of choice at no expense to the government, as provided for in 8 C.F.R. § 1003.16(b) and 8 C.F.R. § 1292.5(b) of the regulations of the Executive Office for Immigration Review;

d.  constitutional right to a full and fair hearing in removal proceedings, as provided for in the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

e.  statutory right to a full and fair custody redetermination hearing, as provided for in 8 U.S.C. § 1226(a) of the Immigration and Nationality Act;

      f.   statutory right to gather and present evidence in connection with immigration proceedings, as provided for in 8 U.S.C. § 1229a(b)(4)(B) of the Immigration and Nationality Act;

      g.   constitutional right to petition the government for redress of grievances, as provided for in the First Amendment to the U.S. Constitution; and

      h.   protections to ensure telephone access, as provided for in the 2011 Performance-Based National Detention Standards on Telephone Access.

9.    Defendants' policies, practices, and omissions in denying and restricting telephone access have a dramatic impact on Plaintiffs' cases and on the duration of Plaintiffs' custody.  The consequences of Defendants' wrongdoing, as elaborated herein, include:

      a.   inability to retain counsel or consult with counsel over the telephone, delaying counsel from requesting custody redetermination hearings or preparing for a custody redetermination hearing, prolonging Plaintiffs' detention;

      b.   inability to contact attorneys to let them know about important case dates and deadlines, including court hearings.  At times, this results in a lack of attorney attendance and representation at the hearings;

      c.   inability to prepare a defense and adequately present a case.  As a result of Defendants' conduct, many Plaintiffs who would be eligible to remain in the United States are deported; and

      d.   preventing some Plaintiffs who, upon information and belief, may accept a removal order earlier in the process if they were able to obtain legal consultation over the telephone, sparing themselves and the taxpayer the significant costs of detention, from doing so.

10.    For these reasons, the Individual Plaintiffs seek to represent a class of all current and future adult immigration detained persons who are or will be held in ICE custody in El Paso or Otero and to obtain an order from this Court enjoining the policies, practices, and omissions

that are preventing Plaintiffs from realizing their constitutional, statutory, and regulatory rights, including the promise of due process in immigration proceedings.

## JURISDICTION

11.    This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 and 2202 (declaratory relief), 28 U.S.C. § 2241 (habeas corpus); and 5 U.S.C. § 706 (waiver of sovereign immunity).

## VENUE

12.    Venue is proper in the District of New Mexico under 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred, and continues to occur, in this district.

## PARTIES

13.    Plaintiff Franklin Gomez Carranza is a 21-year-old native and citizen of Honduras who is seeking asylum under 8 U.S.C. § 1158 for fear of persecution for his sexuality.  Since March 20, 2020, Plaintiff Gomez Carranza has been detained in ICE custody at Otero and from October 2019 until March 20, 2020, he was detained in ICE custody at El Paso.

14.    Plaintiff Ruben Torres Jauregui is a 29-year-old native and citizen of Cuba who is seeking asylum under 8 U.S.C. § 1158 for fear of persecution for protesting against corruption in the Cuban government.  Since August 2019, Plaintiff Torres Jauregui has been detained in ICE custody at Otero.

15.    Defendant ICE is a federal law enforcement agency within DHS.  ICE is responsible for enforcement of the immigration laws, including the detention, incarceration, and removal of noncitizens.  ICE discharges its responsibility for incarceration of immigrants by *inter alia*:  (1) promulgating detention standards to be followed in the facilities in which immigrants are held pending removal hearings, including with respect to telephone access; and (2) contracting with the government entities and private corporations that operate detention facilities, including the facilities in which all members of the Class are incarcerated.

Enforcement and Removal Operations ("ERO"), a division of ICE, manages and oversees the immigration detention system.

16.    Defendant Matthew T. Albence is the Acting Director of ICE.  As Acting Director, Defendant Albence is responsible for ICE's policies, practices, and procedures, including those relating to the detention of individuals pending their removal proceedings.

17.    Defendant DHS is the arm of the federal government responsible for the enforcement and administration of the immigration laws.  The component agencies of DHS include ICE; United States Citizenship and Immigration Services ("USCIS"), which administers the legal immigration system and grants immigration benefits; and United States Customs and Border Protection ("CBP"), which is responsible for the initial processing and detention of noncitizens who are apprehended at or near the border.

18.    Defendant Chad F. Wolf is the Acting Secretary and highest-ranking member of DHS.  As Acting Secretary of DHS, Defendant Wolf is responsible for DHS's policies, practices, and procedures and exercises authority and oversight over ICE.

19.    Defendant Corey A. Price is the Field Office Director for the El Paso Field Office of ICE.  The El Paso Field Office is responsible for carrying out ICE's immigration detention and removal operations in West Texas and New Mexico.  As Director, Defendant Price oversees the El Paso Field Office's functions and implementation of its detention standards, including with respect to telephone access.

20.    Defendants Albence, Wolf, and Price are sued in their official capacities only.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

**Background on Removal Proceedings**

21.    Deportation or "removal" proceedings before an immigration judge begin when DHS issues a Notice to Appear ("NTA") charging removability.  *See* 8 U.S.C. § 1229(a). Removal cases are adjudicated by the immigration courts in the first instance and generally may be reviewed on appeal by the Board of Immigration Appeals ("BIA").  *See* 8 U.S.C. §§ 1001(a)(47)(B); 1229a(a)(1), (c)(5); 8 C.F.R. § 1003.1.  Both the immigration courts and the BIA

1    are part of the Executive Office for Immigration Review ("EOIR") within the United States

2    Department of Justice.  Decisions of the BIA are reviewable by the United States courts of

3    appeals.  *See generally* 8 U.S.C. § 1252.

4        22.    In general, the initial appearance in removal proceedings before the EOIR is the

5    master calendar hearing.  At this hearing, the immigration judge advises the respondent of his or

6    her rights with respect to the hearing, accepts pleadings on the charges in the NTA, asks whether

7    the respondent wishes to apply for relief or protection from removal and whether he or she

8    intends to seek legal advice or representation.  8 C.F.R. § 1240.10.  If the respondent submits an

9    application for relief, the immigration judge usually will set the case for an evidentiary hearing

10   on removability, relief or protection from removal, and other issues that determine whether the

11   respondent will be permitted to remain in the United States.  The scheduled hearings are subject

12   to change at the last minute.

13       23.    An individual facing removal proceedings before the EOIR has procedural rights,

14   including, *inter alia*, the right to examine, present, and rebut evidence and to contest the charges

15   on which DHS seeks removal.  *See* 8 U.S.C. §1229(c)(4); 8 C.F.R. §, 1240.10(c). For example, a

16   respondent can demonstrate that he or she is in fact a U.S. citizen, or – if alleged to be removable

17   because of a criminal offense – that he or she was not convicted of the alleged offense, or that the

18   offense is not a removable offense.  If the charges of removability are not sustained, the removal

19   proceedings are terminated.

20       24.    An individual facing removal proceedings before the EOIR may also seek relief

21   from removal, for which he or she bears the burden of proof.  *See* 8 U.S.C. § 1229a(c)(4)(A).

22   For example, an immigration judge may grant "cancellation of removal" based on certain

23   statutory eligibility requirements and evidence demonstrating compelling reasons for being

24   permitted to remain in the United States.  *See generally* 8 U.S.C. § 1229b.  To secure

25   cancellation of removal, a respondent has the burden of proving eligibility, including that he

26   merits a favorable exercise of discretion, through evidence such as employment records and

27   letters of support or live testimony from community members.  The respondent may also apply

for asylum, withholding of removal, and protection under the Convention Against Torture, which are related forms of relief available to respondents who would face harm if returned to his or her country of origin.  Like other forms of relief, all fear-based claims have different requirements and standards, but generally require presentation of detailed evidence, including affidavits, testimony, official records, and reports documenting conditions in the relevant country.  *See* 8 U.S.C. §§ 1158; 1231(b)(3); 8 C.F.R §§ 208.16-208.18.

25.    In addition to removal proceedings before the EOIR, removal proceedings can occur before DHS officers, including Reinstatement of Removal, Expedited Removal Proceedings, and Administrative Removal Proceedings.  *See* 8 U.S.C. § 1231(a)(5); 8 U.S.C. § 1225; 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1(b)(1); 8 C.F.R. § 241.8(b).  Individuals have procedural rights and protections here too – as well as the need to seek counsel and gather evidence – including the right to oppose the findings of the DHS officers in Reinstatement of Removal; the right to apply for asylum in Expedited Removal Proceedings; and the right to counsel at no expense to the government and to review DHS's evidence and respond accordingly in Administrative Removal Proceedings.

**Background on Bond Proceedings**

26.    With some exceptions, individuals held in ICE custody can request a bond redetermination hearing at which an immigration judge reviews ICE's initial custody determination.  *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 1003.19, 1236.1(c).  At this hearing, which is separate from evidentiary hearings on removability and relief from removal, the individual generally has the burden of demonstrating that he or she is neither a danger to the community nor a flight risk.  *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).  This evidence may include, among other things, the individual's own testimony, testimony from third-party witnesses, and documentary evidence of his or her good character and community ties.

27.    In an effort to seek release on bond, detained individuals often seek legal representation.  If they do not have representation, they must independently gather information and evidence in connection with bond redetermination hearings.

**The 2011 Performance-Based Detention Standards**

28.    The ICE standards purporting to govern conditions of confinement in Otero and El Paso are the 2011 Performance-Based National Detention Standards ("2011 PBNDS"), available at http://www.ice.gov/detention-standards/2011 (last visited February 23, 2020).  *See* Dep't of Homeland Sec. & U.S. Immigration and Customs Enf't, Progress in Implementing 2011 PBNDS Standards and DHS PREA Requirements at Detention Facilities app. D at 15 (Jan. 17, 2017) (hereinafter "Progress in Implementing Requirements at Detention Facilities"), https://www.dhs.gov/sites/default/files/publications/ICE%20-%20Progress%20in%20Implementing%202011%20PBNDS%20Standards.pdf.

29.    The stated purpose of Section 5.6 of the 2011 PBNDS on Telephone Access is to "ensure[] that detainees may maintain ties with their families and others in the community, legal representatives, consulates, courts and government agencies by providing them reasonable and equitable access to telephone services."

30.    The "Expected Outcomes" of the 2011 PBNDS include, *inter alia*, that detained individuals shall:

a.    have reasonable and equitable access to reasonably priced telephone services;

b.    be granted reasonable and appropriate telephone accommodations for hearing or speech disabilities;

c.    be able to communicate effectively with their legal counsel;

d.    have private, confidential communications with attorneys;

e.    be able to make free calls to certain free legal service providers and government agencies;

f.    be permitted to make free calls to family and others assisting with legal proceedings, if indigent and representing themselves *pro se*;

g.    have access to telephones maintained in proper working order; and

h.    be provided instructions on telephone use in one's own language, including rare languages.

31.     The "Expected Practices" of the 2011 PBNDS include, *inter alia*, that facilities shall:

      a.   provide at least one telephone for every ten detained individuals;

      b.   post a list of calling rates in each housing unit;

      c.   inspect telephones daily and repair service promptly, including ensuring that the free calls function;

      d.   provide detained individuals with current *pro bono* legal service information; and

      e.   provide confidential, unmonitored calls with legal representatives.

32.     The 2011 PBNDS makes clear that Defendants "may not limit a detainee's attempt to obtain legal representation.  Full telephone access shall be granted in order for a detainee to contact… legal representatives, … government offices to obtain documents relevant to his/her immigration case; …immediate family…"  Furthermore, "[f]ree and direct calls shall be easily accessible."  Detained individuals shall be able to make legal calls "without being overheard by staff or other detainees."

**Defendants' Denial and Restriction of Private Telephone Access Deprive Plaintiffs of Confidential Communications with Counsel**

33.     Defendants provide no way for Plaintiffs to communicate with counsel or prospective counsel confidentially, depriving Plaintiffs of the attorney-client privilege.  *Cf.* 2011 PBNDS at 364 (facilities shall ensure privacy for legal calls and may do so by installing privacy panels, placing telephones in locations where conversations are not readily overheard, or by providing detained clients access to office telephones).  Neither do Defendants enable Plaintiffs any privacy whatsoever when making other sensitive calls.  Instead, Defendants require Plaintiffs to make calls in the presence of detention officers and other detained individuals.

34.     ICE has acknowledged that it refuses to accommodate confidential legal calls.  In response to an April 9, 2020 request from a non-profit legal services provider to personnel at Otero to schedule confidential legal calls with two detained individuals, Otero responded four days later that "the facility cannot provide a confidential place for a legal call at this time."

Again, on April 23, 2020, personnel at Otero wrote, "[t]here is no place for them to have a confidential call."

35.    Detention officers at El Paso and Otero have, on occasion, permitted Plaintiffs to use the officers' personal cell phones in order to place *non-confidential* calls to their attorneys. During these calls, often made in the detention officers' offices, detention officers sit next to Plaintiffs while on calls with attorneys, destroying attorney-client privilege and making Plaintiffs feel uncomfortable having legally necessary candid discussions.  To compound the lack of privacy, often the calls are on speaker phone and the detention officers' cell phones log data from the call, such as the phone number and duration of call.  Beyond destroying the attorney-client privilege, this practice has been entirely discretionary and is at the whims of the individual officers.  In fact, as of April 14, 2020, Wayne Cox, the Assistant Field Office Director for Otero reported to a nonprofit legal services provider that personnel at Otero "will no longer set up calls with detainees."

36.    In both El Paso and Otero, Defendants have installed some privacy panels around telephones, called the "pods."  Although these "pods" purport to maintain confidentiality, they only offer simple barriers that do not actually ensure privacy as attorneys can still hear background noise from detention officers in the area.  Furthermore, the call quality in the "pods" is remarkably bad, which can lead to communication difficulties between attorney and client. The alternative to the "pods" system is for Plaintiffs to use their own funds to place a call within their housing units.  Although the quality of the calls is sometimes better, Plaintiffs face the burden of paying for these calls and there is absolutely no attorney-client privilege, as other detained individuals and detention officers surround the caller.

**Defendants' Imposed Costs Deny and Restrict Plaintiffs' Telephone Access**

37.    Plaintiffs' ability to locate, retain and communicate with counsel, and to gather and present evidence in their removal proceedings, is further restricted by the fact that the telephone services provided by Defendants for calls from El Paso and Otero are unreasonably – and often prohibitively – expensive.

38.     Personnel at Otero have admitted that the facility does not provide free legal calls. In an email dated April 23, 2020, in response to a request to provide detained individuals with free legal calls, ICE personnel wrote, "IT DOESN'T MATTER IF IT'S A LEGAL CALL THEY ARE NOT FREE." (emphasis in original).

39.     For paid calls, Talton and Telmate are the phone providers for Otero and El Paso, respectively.  Talton and Telmate advertise that calling rates range from $0.09 to $0.14 to connect and $0.09 to $0.14 a minute thereafter, and that additional taxes and surcharges may apply.  In practice, attorneys representing clients detained in Otero have found that calls cost at least $0.20 per minute.

40.     Pursuant to Talton and Telmate's policies, as endorsed and permitted by Defendants, a collect call from Otero is automatically disconnected after one hour and a collect call from El Paso is automatically disconnected after 45 minutes.  Thus, an hour-long call from Otero ranges in cost from $5.19 to $8.15 and a 45-minute call from El Paso ranges in cost from $3.89 to $6.11.

41.     The costs from these calls can tally up quickly and are prohibitively expensive for many members of the class who are indigent.  Given the significant expense, some Plaintiffs have been forced to choose between calling a loved one or calling their attorney.  *Cf.* 2011 PBNDS at 360 (facilities shall provide access to "reasonably priced telephone services").

42.     For a video teleconference, the expense only increases:  the call can cost $80.00 for a three-hour session.

43.     Since on or about mid-April 2020, attorneys representing clients detained in Otero have been told that Talton is providing 10-minute-long free legal calls for detained individuals on Wednesdays.  A 10-minute weekly legal call is not at all sufficient to prepare a legal defense or to exercise one's right to communicate with counsel.  Furthermore, whether these 10-minute-long weekly free calls will be honored is yet to be seen.

44.     Defendants' poor telephone infrastructure exacerbates costs to Plaintiffs.  The phone systems at Otero and El Paso regularly malfunction and fail to connect or disconnect mid-

call for technical reasons, requiring Plaintiffs to pay a new connection fee to continue their conversations.  Calls from El Paso often spontaneously disconnect after ten minutes.  Likewise, when detention officers at Otero and El Paso arbitrarily order Plaintiffs to end their calls prematurely – sometimes after just five minutes – they are forced to make additional phone calls and incur additional costs to have complete and necessary discussions with their attorneys.  When Plaintiffs must restart conversations with attorneys, efficiency is lost, prolonging the time and cost of the communications.

45.     In most detention centers nationwide (but not Otero or El Paso), ICE – through its telephone contractor – operates a free call platform whereby an attorney can add his or her number to a detained client's account to enable the detained client to call counsel for free from the phones in the housing units.  Because Defendants have not implemented this free call platform in either Otero or El Paso, Plaintiffs cannot make free legal calls to their counsel.

46.     Defendants make no accommodations for indigent Plaintiffs in El Paso and Otero to make free calls, including calls to legal counsel.  *Cf. id.* at 363 ("Indigent detainees are afforded the same telephone access and privileges as other detainees.").  In El Paso, Plaintiffs are required to have sufficient funds on a calling card to place a call.  In Otero, Plaintiffs can make telephone calls only if they have the requisite funds in their commissary accounts.  Because of the lack of accommodations, some non-profit legal services have begun to use their own funds to help their clients pay for the prohibitively expensive phone calls.

**Defendants' Denial and Restriction of Plaintiffs' Telephone Access Prevent Counsel from Communicating with Their Clients**

47.     Defendants do not permit individuals held in ICE custody to receive incoming telephone calls, even from counsel.  *See* El Paso Processing Center, available at https://www.ice.gov/detention-facility/el-paso-processing-center (last visited March 30, 2020) ("Detainees cannot receive incoming calls."); Otero County Process Center, available at https://www.ice.gov/detention-facility/otero-county-processing-center (last visited March 30, 2020) (same).  Instead, Defendants represent that they will convey "urgent" messages to detained

individuals. *Id.* In practice, Defendants have questioned legal counsel as to whether calls were "really" urgent and do not consistently deliver messages. *Cf.* 2011 PBNDS at 390 (facilities "shall take and deliver telephone messages to detainees as promptly as possible").

48.    The telephone systems Defendants have put in place in El Paso and Otero allow a call to be completed only if a live person answers the telephone and accepts the call (by pressing a number in response to a prompt), even if a prepaid account has been established. If a recorded greeting, such as a voicemail prompt, begins to play, Plaintiffs cannot leave a message. As such, Plaintiffs cannot leave voicemail messages even when they are willing and able to pay through calling cards or commissary accounts (though calls to legal counsel should be free).

49.    Because of Defendants' telephone infrastructure, Plaintiffs are also unable to complete calls to offices that use voicemail trees, *i.e.*, automated systems that require selecting a number on the phone's keypad to reach a live person. As the El Paso and Otero calling systems currently function, Plaintiffs' calls are automatically disconnected when voicemails or automated systems respond. Calls may only be completed when a human receives the call and accepts the call. Many organizations and law firms that Plaintiffs seek to access use voicemail trees in the normal course of business before the caller can access a live person.

50.    Three-way calls serve a critical function for communications between detained clients and their attorneys requiring translation by third-party translators. Three-way calls are not available in Otero. As such, if a translator is needed, the attorney needs to have the translator on-site or risk being unable to communicate with their client.

51.    At times, El Paso and Otero officials hear requests from counsel to set up legal calls with Plaintiffs. The practice of accepting and conveying such requests is uncertain and inconsistent, and ICE officers often do not pass along these critical messages to Plaintiffs, further depriving them of attorney-client communications. The time between requesting a call and receiving a call with a client has, in practice, taken up to two weeks, which makes calls requested on an urgent basis entirely futile. In an email from ICE personnel dated April 27, 2020, an Otero

official referred to the ICE-facilitated legal calls as "one time courtesy call[s]."  Thus, they

cannot be relied upon as a mode of communication between counsel and Plaintiffs.

52.    Since the beginning of April 2020, officials from Otero have ceased arranging

legal calls for Plaintiffs, even when repeatedly implored by counsel to do so.  Instead, Otero

officials have told counsel to visit in person, which – in the COVID-19 era – requires personal

protective equipment that many attorneys do not have access to.  Moreover, many attorneys are

located too far from Otero for physical visitation to be feasible.

53.    Non-profit legal service providers have sought to fill the gap in telephone access

between counsel and detained clients.  These providers have established a system of collecting

*pro bono* attorney contact information and delivering it to Defendants.  Defendants have

represented that they would share this attorney contact information with respective clients, but do

not always do so in practice.

**At Best, Defendants Provide Plaintiffs with Inconsistent, Confusing, and Insufficient
Telephone Access**

54.    Defendants' telephone infrastructure is inadequate and defective.  The telephones

in the housing units do not always function.  *C.f.* 2011 PBNDS at 386 ("[e]ach facility shall

maintain detainee telephones in proper working order").  When operable, the telephones suffer

from poor sound quality and are located in places with excessive background noise.  Poor sound

quality and excessive background noise hampers all calls but is particularly detrimental to

telephone communications (1) involving complex legal topics where precision and clarity is

essential for consent and understanding; (2) facilitated by a language interpreter; and (3) between

counsel and a detained client paying by the hour.  For all calls, a great deal of time is wasted

trying to understand one another over the noise.

55.    Plaintiffs who speak rare languages, who have hearing disabilities, or who cannot

read face special difficulties using the phone systems in the facilities.  Instructions are generally

unavailable in rare languages.  ICE and facility officers routinely ignore or deny requests for

assistance from these Plaintiffs, often instructing them to obtain advice and assistance from other detained individuals.

**Defendants' Denial of Plaintiffs' Right to Legal Representation and Other Resources Critical to Support Their Cases**

56.     In Otero, Defendants deny non-profit legal services access to potential clients by refusing calls for the purpose of legal intake.  Defendants refuse to organize such calls, claiming that, in order to set up a call, they require a Form G-28, Notice of Entry or Appearance as Attorney or Accredited Representative.  This would require attorneys to enter into an attorney-client relationship without even speaking to the prospective client to assess their case.  Given that no attorney could ethically engage in that practice, non-profit legal services are unable to communicate with potential clients.

57.     Defendants' denial and restriction of telephone access to individuals in ICE custody also prevent Plaintiffs, and particularly Plaintiffs who must represent themselves, from obtaining and presenting evidence necessary to obtain a fair hearing.  This includes evidence that would entitle them to release from detention, relief from removal, or immigration benefits from USCIS that would terminate deportation proceedings.  Plaintiffs seeking custody redetermination from an immigration judge may need to contact character witnesses and obtain documentary evidence of their good works in the community, completion of rehabilitation programs, or the financial hardship their detention imposes on their United States citizen children.  Defendants' restriction and denial of telephone access make it difficult or impossible for Plaintiffs to obtain this documentation while held in ICE custody.

58.     Defendants' restriction and denial of telephone access not only undermines Plaintiffs' access to counsel but also impedes, if not entirely prevents, their ability to seek non-immigration attorney assistance, including to reach out to attorneys, organizations, or family members to report harassment or abuse in the detention facility by other detained individuals or ICE officers.

**There Are No Viable Alternatives to Telephone Communication**

59.    Without telephone access to Plaintiffs, attorneys, family members and others who might assist in gathering evidence necessary to defend removal charges or seek relief from removal can contact Plaintiffs only by postal mail or by in-person visitation.  Defendants have not made electronic mail available to detained clients in El Paso and Otero.

60.    Legal correspondence to and from ICE custody can take 5-10 business days in each direction.  Letters are inspected to ensure that they are indeed legal mail and do not contain contraband.  Some Plaintiffs cannot communicate by mail because they cannot read or write in any language.

61.    Many Plaintiffs are represented by *pro bono* attorneys located nationwide and the geographical distance between them is significant.  Overcoming that distance requires hundreds to thousands of dollars and up to several hours per visit.  For example, in order for a *pro bono* attorney based in New York to physically visit a detained client in El Paso, he or she would have to take a 1+ stop flight totaling approximately 16 roundtrip travel hours and costing upwards of $400.  To visit a detained client in Otero, a New York-based attorney would be forced to add the time and expense of renting a car and driving from El Paso to Otero.  Even an in-state attorney working in Santa Fe, for example, would have to drive nearly five hours in each direction to visit a client in Otero.

62.    With COVID-19-related mandated remote working and social distancing policies, in-person visitation is all but impossible.  By not offering reasonable telephone infrastructure to Plaintiffs and instead requiring in-person visitation for Plaintiffs to exercise their constitutional and statutory rights, Defendants are jeopardizing the public health and flouting the government's own policies.

63.    Moreover, transfers of detained individuals amongst detention facilities, including transfer from Otero and El Paso, is widespread, creating further difficulties in consistent communications between detained individuals and counsel.  Even if a detained individual is successful in retaining a local attorney, if he or she is transferred, that attorney is, obviously, no

longer local.  This emphasizes, all the more, the inability to rely on local visitation during the course of legal representation.  Exasperating the telephone access issues, transfers force Plaintiffs and their attorneys to renew their efforts to navigate the impediments Defendants have put in place just to exercise the constitutional right to legal representation.

**Prolonged Incarceration and Dramatically Decreased Likelihood of Relief**

64.    Defendants' denial and restrictions on telephone access in these circumstances deny or severely limit Plaintiffs' statutory and constitutional rights to retain counsel, to communicate with retained counsel, to gather and present evidence, to obtain a fair hearing, to seek relief from persecution and torture, and to apply for immigration benefits from USCIS in seeking relief from removal, with a dramatic and devastating impact on Plaintiffs.

65.    Defendants' restrictions on and denial of telephone access to individuals held in ICE custody contributes to prolonging Plaintiffs' incarceration.  For instance, attorneys have had to postpone crucial hearings before an immigration judge because, despite multiple and repeated attempts to contact Plaintiffs, the Defendants did not provide for such contact.

66.    Restricted telephone access between Plaintiffs and counsel increases the time Plaintiffs are incarcerated before counsel can move for and coordinate bond determination and redetermination hearings.  For Plaintiffs that face discrimination and abuse while detained, and for Plaintiffs separated from minor children, this prolonged incarceration is especially distressing.

67.    Defendant's restrictions on Plaintiffs' telephone access prevent many Plaintiffs from retaining counsel or obtaining evidence.  The subsequent lack of representation and missing critical evidence at the bond hearings can lead to denial of bond, thereby prolonging detention.

68.    To illustrate the disparity, in Fiscal Year 2019, 11.5% of individuals with cases pending in Immigration Court were detained.  Of those detained, 36.3% were represented by counsel, and of those, 12.6% were granted relief.  Of those detained and <u>not</u> represented by counsel, just 4.11% were granted relief.  *See* TRAC Immigration Data, https://trac.syr.edu/phptools/immigration/nta/ (last visited:  March 31, 2020).

69.    In Fiscal Year 2018, 18% of individuals with cases pending in Immigration Court were detained.  Of those detained, 34.7% were represented by counsel, and of those, 12.9% were granted relief.  Of those detained and <u>not</u> represented by counsel, <u>just 1.85% were granted relief</u>.  *See id.*

### ALLEGATIONS RE:  INDIVIDUAL PLAINTIFFS

**Plaintiff Franklin Gomez Carranza**

70.    Plaintiff Franklin Gomez Carranza is a 21-year-old native and citizen of Honduras.  He currently is in ICE custody at Otero and has pending removal proceedings before the El Paso Immigration Court.  He fled his home country because he feared he would be persecuted for his sexuality and is seeking asylum under 8 U.S.C. § 1158.  Ever since being detained, Plaintiff Gomez Carranza has had great difficulty communicating with his counsel because of ICE's unconstitutional restrictions on his telephone access in El Paso and Otero.

71.    In October 2019, shortly after arriving to the United States, Plaintiff Gomez Carranza was detained in ICE custody at El Paso.  At El Paso, Plaintiff Gomez Carranza faced limited access to telephones, including extremely poor connectivity issues.  Thus, Plaintiff Gomez Carranza's attorney found it easier to communicate with his client through in-person visitations at El Paso.  But this was before the COVID-19 outbreak.  Since then, the only viable way for Plaintiff Gomez Carranza and his attorney to communicate is by telephone.

72.    For undisclosed reasons, on March 20, 2020 – five days prior to Plaintiff Gomez Carranza's final removal hearing – ICE transferred him from El Paso to Otero.  Plaintiff Gomez Carranza's attorney was not notified of the transfer and thus wasted days attempting to reach his client via telephone at Otero to prepare for the hearing, without success.

73.    On March 23, 2020, two days before his final removal hearing, Plaintiff Gomez Carranza managed to call his attorney.  On this call, Plaintiff Gomez Carranza sought to prepare for his final removal hearing, because, without an adequate defense, he risked being removed to Honduras, where he would be persecuted for his sexuality.  Halfway through their legal call, an

ICE detention officer arbitrarily ordered Plaintiff Gomez Carranza to end the call.  The call did

not resume.

74.    On March 24, 2020, one day before his final removal hearing, Plaintiff Gomez

Carranza's attorney made a request to ICE for his client to call him at a scheduled time.  ICE

permitted Plaintiff Gomez Carranza to call his counsel 40 minutes after the scheduled time.

Plaintiff Gomez Carranza had no privacy or confidentiality on the legal call.  During the call, an

ICE detention officer interrupted Plaintiff Gomez Carranza, telling him to get off the phone

because he had to ask him something.  Plaintiff Gomez Carranza thus ended his legal call, and

hearing preparation, prematurely.  The ICE detention officer then asked Plaintiff Gomez

Carranza if the call was for legal purposes.  Plaintiff Gomez Carranza confirmed that it was, but

the detention officer refused to permit him to continue the call.

75.    Later that day, Plaintiff Gomez Carranza called his attorney back from a

telephone in the housing unit, which required him to use his own funds and deprived him of any

privacy or attorney-client privilege.  Because Plaintiff Gomez Carranza is indigent, he was only

able to speak with his attorney for half an hour before his funds ran out.  Due to the lack of

privacy and fear of being overheard by other detained individuals and ICE personnel, Plaintiff

Gomez Carranza was unable to speak candidly about his asylum case with counsel.  As such,

when referring to sensitive information, Plaintiff Gomez Carranza used hushed tones so that

guards and other detained individuals could not hear.  This, coupled with the background noise

in the housing units, significantly interfered with the quality of the call.  Due to the deficient

telephone access, Plaintiff Gomez Carranza was unable to prepare adequately for his final

removal hearing and his counsel had to file a Motion to Continue the hearing.  The immigration

court granted the Motion for a Continuance, rescheduling Plaintiff Gomez Carranza's final

removal hearing for April 8, 2020.  Due in part to the serious concerns regarding access to

counsel caused by ICE's failure to provide adequate telephone access, Plaintiff Gomez

Carranza's counsel objected to the rescheduled final hearing date and requested that the court

schedule a status conference instead of the final removal hearing.  The immigration court then

moved the next hearing date to May 27, 2020. Because of the constraints that Defendants placed upon Plaintiff Gomez Carranza's ability to communicate with his attorney, his hearing has been delayed for two months, causing prolonged detention in a highly unsafe environment with limited to no access to counsel for an additional two months.

76.    Plaintiff Gomez Carranza's telephone access experiences, corresponding legal issues, and remedies sought are shared by and aligned with the approximately 1,600 detained individuals in Otero and El Paso.

**Plaintiff Ruben Torres Jauregui**

77.    Plaintiff Ruben Torres Jauregui is a 29-year-old native and citizen of Cuba. He currently is in ICE custody at Otero and has pending removal proceedings before the El Paso Immigration Court. He fled his home country because he feared he would be persecuted for speaking out against the corruption within the Cuban government and is seeking asylum under 8 U.S.C. § 1158. Plaintiff Torres Jauregui's fears of persecution are based in part on his uncle's eight-year imprisonment by the Cuban government for similar conduct.

78.    Since April 14, 2019, Plaintiff Torres Jauregui has been detained in ICE custody, and has been housed at Otero since August 2019. Ever since being detained at Otero, Plaintiff Torres Jauregui has had great difficulty communicating with his counsel because of ICE's unconstitutional restrictions on his telephone access.

79.    Plaintiff Torres Jauregui had a final merits hearing on his asylum petition scheduled for April 1, 2020. In the two weeks leading up to Plaintiff Torres Jauregui's hearing, his attorney attempted to set up telephone calls with him in order to prepare his case. Specifically, on March 15, 2020, his attorney requested that personnel at Otero set up confidential legal phone calls for March 17, 2020 and March 18, 2020. Plaintiff Torres Jauregui's attorney received a call on March 17, 2020, but not on March 18, 2020, and the single phone call did not provide an adequate amount of time to prepare Plaintiff Torres Jauregui for his final merits hearing. Again, on March 24, 2020, his attorney requested confidential legal phone

1    calls for March 26, 2020, March 27, 2020, and March 30, 2020.  Plaintiff Torres Jauregui was

2    permitted a legal call only on March 26, 2020.

3        80.    Plaintiff Torres Jauregui's attorney submitted another request asking for

4    personnel at Otero to set up a confidential phone call with her client for March 30, 2020 and

5    March 31, 2020.  On March 30, 2020, an ICE deportation officer informed Plaintiff Torres

6    Jauregui's attorney that the phone system at Otero was not working and suggested that the

7    attorney visit her client in person if she wished to speak with him – despite COVID-19 concerns.

8    Because Plaintiff Torres Jauregui's attorney lacked the personal protective equipment to visit her

9    client in person, she renewed her request for a legal call.  The ICE deportation officer offered to,

10   "as a courtesy," set up a 45-minute legal call.  The officer explained that ICE could not permit

11   legal calls in Otero to last longer than 45 minutes because ICE deportation officers needed the

12   phones "for their daily work purposes," and ICE "cannot have the phones [in Otero] tied up for 2

13   hours."  In the alternative, Plaintiff Torres Jauregui could pay out of pocket to call his attorney

14   from the phones in the housing units, which lack privacy and are recorded by ICE, thus

15   destroying the attorney-client privilege.

16       81.    Because Plaintiff Torres Jauregui was still unable to meaningfully prepare for his

17   hearing scheduled in two days, his attorney re-requested a call on March 30, 2020 for the

18   following day.  An ICE deportation officer responded, stating that due to "availability, COVID-

19   19 measures, and the fact that your client has already received free phone calls this past week we

20   will be unable to accommodate your request."  Because Plaintiff Torres Jauregui was unable to

21   have a meaningful preparatory call with his counsel, he did not feel prepared for his final merits

22   hearing.  As such, his attorney filed a Motion for Continuance and Plaintiff Torres Jauregui's

23   final merits hearing was rescheduled to May 6, 2020.

24       82.    Due to the constraints that Defendants placed upon Plaintiff Torres Jauregui's

25   ability to communicate with his counsel – including the limited availability of free legal calls, a

26   lack of privacy, deprivation of attorney-client privilege, and insufficient duration and amount of

27

legal calls – his hearing has been delayed for an additional month, and, thus, his detention has been prolonged by at least an additional month in a highly unsafe environment.

83.    Plaintiff Torres Jauregui's telephone access experiences, corresponding legal issues, and remedies sought are shared by and aligned with the approximately 1,600 detained individuals in Otero and El Paso.

## CLASS ALLEGATIONS

84.    The Individual Plaintiffs bring this action on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.  They propose the following Class:

> All current and future adults who are or will be detained in immigration custody
> at the El Paso Service Processing Center and the Otero Processing Center.

85.    Defendants have engaged in a common course of conduct that has denied constitutional and statutory rights on a classwide basis, including by promulgating, implementing, maintaining and enforcing the policies and practices that deny and restrict Plaintiffs' telephone access at El Paso and Otero, and by failing to take actions necessary to allow Plaintiffs to consult with or obtain representation by counsel, to gather and present evidence, to petition government agencies to obtain immigration benefits and documents necessary to seek relief from removal, and to obtain a fair hearing.

86.    Plaintiffs seek injunctive and declaratory relief only, on grounds that apply broadly to the Class as a whole.

87.    Members of the Class are so numerous that joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that El Paso and Otero hold a combined total of approximately 1,600 detained individuals on an average day.

88.    Joinder is also impracticable because membership in the Class is fluid, as detained individuals are frequently released from custody, transferred to other regions of the country, or

removed from the United States.  The Class includes individuals who will be subjected to Defendants' policies, practices, and omissions in the future and therefore cannot be joined.

89.    There are numerous questions of law and fact common to the Class, which predominate over any individual questions, including:

(a)    the extent to which Defendants' policies, practices and omissions denying and restricting telephone access interfere with Plaintiffs' ability to consult with and retain counsel; communicate effectively with counsel; and gather information and evidence in support of their claims, defenses, and applications for relief;

(b)    whether Defendants' policies, practices and omissions in denying and restricting telephone access violate Plaintiffs' (i) right to be represented by counsel, (ii) right to a fair hearing, and (iii) right to gather and present evidence, under the Fifth Amendment Due Process Clause, the INA and its implementing regulations, and the APA; and (iv) right to obtain information, documents, and immigration benefits that can provide relief from removal under the First Amendment's Petition Clause; and

(c)    whether Defendants' policies, practices and omissions violate the detention standards promulgated by ICE with respect to telephone access.

90.    The Individual Plaintiffs are members of the Proposed Class, subjected to telephone access policies and practices that deny, violate and impair the constitutional and statutory rights of the Class as a whole.

91.    The Individual Plaintiffs will fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).  They seek relief identical to the relief sought by all Class members and have no interests adverse to other members of the Class.  Plaintiffs are represented by *pro bono* counsel who are experienced in federal class action and civil rights litigation, and will adequately represent the interests of the class.

92.    A class action is superior to all other available methods for adjudicating this controversy, and is manageable, because:

(a)    Defendants are acting and refusing to act on grounds generally applicable to the Class;

(b)    many Class members are unaware of their legal rights, and are unable to obtain individual counsel due to the conduct alleged herein;

(c)    prosecution of individual actions would be impossible because individual Class members would not remain in ICE custody pending removal proceedings long enough to prosecute such actions to a conclusion;

(d)    even if it were possible, prosecution of separate actions by individual Class members would be inefficient, create a risk of conflicting or inconsistent adjudications, and might, as a practical matter, be dispositive of the interests of individual members of the Class;

(e)    by virtue of Defendants' roles in promulgating, implementing, enforcing, and in failing to promulgate, implement and enforce detention standards relating to telephone access for Class members; and

(f)  the injunctive and declaratory relief sought herein will enable Defendants to formulate and implement measures necessary to address and remedy the constitutional, statutory, and regulatory violations resulting from denial and restriction of telephone access, without undue intrusion on legitimate governmental interests.

## **DECLARATORY RELIEF ALLEGATIONS**

93.    An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties with respect to Defendants' policies, practices and omissions in denying and restricting telephone access to the Class.  Plaintiffs contend that Defendants' policies, practices and omissions alleged herein violate their constitutional and statutory rights as alleged in the foregoing paragraphs.  Defendants deny that their policies, practices and omissions violate Plaintiffs' constitutional, statutory, and regulatory rights, and intend to continue such conduct.

## FIRST CLAIM FOR RELIEF

### Right to Representation of Counsel
### (Fifth Amendment Due Process Clause; 8 U.S.C. §§ 1362; 1229a(b)(4)(A); 5 U.S.C. § 555(b); 8 C.F.R. § 1003.16(b); 8 C.F.R. § 1292.5(b))

94.    Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference.

95.    The Due Process Clause of the Fifth Amendment guarantees Plaintiffs the right to representation of counsel, at no expense to the government.

96.    Inherent in the right to representation of counsel is the right to communicate with counsel.

97.    Plaintiffs have a statutory right to representation of counsel at no expense to the government under the INA.  8 U.S.C. §§ 1362; 1229a(b)(4)(A).

98.     Plaintiffs also have a statutory right to representation of counsel at no expense to the government under the APA.  5 U.S.C. § 555(b).

99.    Plaintiffs have a regulatory right to representation by an attorney of his or her choice at no expense to the government under the regulations of the Executive Office for Immigration Review.  8 C.F.R. § 1003.16(b); 8 C.F.R. § 1292.5(b).

100.    Defendants have violated Plaintiffs' right to representation of counsel by denying and severely restricting Plaintiffs' ability to make telephone calls to locate, consult with, and retain counsel, and Plaintiffs' ability to communicate with retained counsel.

101.    Plaintiffs have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and omissions and are entitled to injunctive relief to avoid any further injury.

## SECOND CLAIM FOR RELIEF

### Right to Full and Fair Hearings

### (Fifth Amendment Due Process Clause; 8 U.S.C. § 1229a(b)(4)(B); 8 U.S.C. § 1226(a))

102.    Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference.

103.    The Due Process Clause of the Fifth Amendment guarantees Plaintiffs the right to a full and fair hearing in removal proceedings, including a reasonable opportunity to gather and present evidence.

104.    Plaintiffs have a statutory right to gather and present evidence in connection with their removal proceedings under the INA.  8 U.S.C. § 1229a(b)(4)(B).

105.    Plaintiffs also have a right to a full and fair custody redetermination hearing.  8 U.S.C. § 1226(a).

106.    Defendants have violated Plaintiffs' right to a full and fair hearing by denying and severely restricting Plaintiffs' ability to make telephone calls to gather information and obtain evidence in support of their immigration cases.

107.    Plaintiffs have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and omissions and are entitled to injunctive relief to avoid any further injury.

### THIRD CLAIM FOR RELIEF

**Right to Petition the Government for Redress of Grievances**

**(First Amendment Petition Clause)**

108.    Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference.

109.    The First Amendment guarantees Plaintiffs the right to petition the government for redress of grievances, including the right to petition a federal agency for immigration benefits that, if granted, would result in termination of their removal proceedings.

110.    Defendants have violated Plaintiffs' right to petition the government by denying and severely restricting the telephone access necessary to seek legal representation and obtain documents and evidence in support of their applications for immigration benefits.

111.    Plaintiffs have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and omissions and are entitled to injunctive relief to avoid any further injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.      Issue an order certifying this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.      Appoint the undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

3.      Issue a judgment declaring that Defendants' policies, practices, acts, and omissions described herein violate Plaintiffs' rights under the United States Constitution and the Immigration and Nationality Act.

4.      Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from subjecting Plaintiffs to the unlawful conditions described herein, and issue an injunction sufficient to remedy the violations of Plaintiffs' constitutional and statutory rights, including:

   a.    An order that Defendants comply with the Performance-Based National Detention Standards;

   b.    An order that Defendants provide free, confidential legal calls and, for non-legal calls, make reasonable accommodations for Plaintiffs who are indigent and cannot afford to make calls, including international calls;

   c.    An order that Defendants establish an adequate process by which immigration attorneys can schedule legal calls with Plaintiffs;

   d.    An order that Defendants afford Plaintiffs the ability to make private, unmonitored, unrecorded calls with attorneys, without being overheard by other detained individuals or staff;

   e.    An order that Defendants afford Plaintiffs the ability to have calls with attorneys in a place of reasonable quiet, without obstructive background noise and poor sound quality;

    f.    An order that Defendants afford Plaintiffs the ability to penetrate automated telephone voicemail trees to make legal calls;

    g.    An order that Defendants afford Plaintiffs the opportunity to leave voicemail messages when making legal calls;

    h.    An order that Defendants provide adequate notice to Plaintiffs of the communication options available to them; and

    i.    An order that Defendants provide accommodations for non-English proficient Plaintiffs, illiterate Plaintiffs, and Plaintiffs with hearing and speech disabilities that impact their access to legal calls.

    5.    Grant Plaintiffs their reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law.

    6.    Grant such other relief as the Court deems just and proper.

Dated:  May 4, 2020                ORRICK, HERRINGTON, & SUTCLIFFE LLP

/s/ R. David Hosp

R. David Hosp
ORRICK, HERRINGTON & SUTCLIFFE, LLP
222 Berkeley St. Ste 2000
Boston, MA  02116
Telephone: (617) 880-1886
Facsimile: (617) 880-1801
Email: dhosp@orrick.com

Paige Pavone
ORRICK, HERRINGTON & SUTCLIFFE, LLP
51 West 52nd Street
New York, NY  10019
Telephone: (212) 506-3604
Facsimile: (212) 506-5151
Email: ppavone@orrick.com

*Attorneys for Plaintiffs*