## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FRANKLIN GOMEZ CARRANZA and
RUBEN TORRES JAUREGUI,

        Plaintiffs,

    v.                            No. 20-cv-00424 KG/KRS

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; MATTHEW T.
ALBENCE, ACTING DIRECTOR OF ICE;
DEPARTMENT OF HOMELAND
SECURITY; CHAD F. WOLF, ACTING
SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY; COREY A. PRICE,
FIELD OFFICE DIRECTOR FOR THE EL
PASO FIELD OFFICE,

        Defendants.

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

The named Plaintiffs ("Named Plaintiffs")[1] in this putative class action are two aliens in

the custody of U.S. Immigration and Customs Enforcement ("ICE") while in removal

proceedings.[2] Doc. 1 ¶¶ 70, 77. They allege Defendants have implemented "policies and practices

that deny and severely restrict their abilities to make telephone calls necessary to consult with or

obtain counsel, gather information and evidence necessary for their cases, and obtain fair hearings

---

[1] Defendants will use "Named Plaintiffs" to refer to Messrs. Gomez Carranza and Torres Jauregui. To the extent the Complaint uses the term "Plaintiffs" to refer to unnamed class members, Defendants will refer to them as "class members" because they are not technically parties to this action until a class is certified.

[2] Named Plaintiff Gomez Carranza has been released on bond. However, because this case is a putative class action, Defendants will address his claims as of the time the Complaint was filed. *See, e.g., Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (noting that where named plaintiffs' claims become moot before certification, class certification can relate back to the filing of the complaint).

while in civil, immigration custody." Doc. 1 ¶ 2. They seek declaratory and injunctive relief on behalf of a class of "[a]ll current and future adults who are or will be detained in immigration custody at the El Paso Service Processing Center and the Otero County Processing Center." *Id.* ¶ 84.

This Court lacks jurisdiction over the claims in this case. First, Named Plaintiffs lack standing to bring claims relating to injuries they have not personally suffered, including inability of unrepresented class members to retain counsel and gather evidence, lack of representation in bond hearings, failure to provide reasonable accommodations to disabled and indigent class members, and inadequate instructions in rare languages. Because Named Plaintiffs personally allege only difficulty communicating with counsel to prepare for removal-related hearings, they have standing to bring claims based solely on those injuries. Second, the Immigration and Nationality Act ("INA") contains a jurisdiction-channeling provision that requires "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" to be reviewed exclusively in the federal courts of appeals. Named Plaintiffs' claims fall within Section 1252(b)(9)'s broad sweep because they are part and parcel of their removal proceedings and therefore cannot be brought in district court. Defendants therefore move the Court to dismiss the action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or alternatively to dismiss it for failure to state a claim under Rule 12(b)(6).

Defendants notified Named Plaintiffs' counsel of this motion, and Named Plaintiffs are opposed.

## MATERIAL JURISDICTIONAL FACTS[3]

1. Named Plaintiff Franklin Gomez Carranza is a 21-year-old citizen of Honduras who, at the time the Complaint was filed, was in ICE custody at the Otero County Processing Center ("Otero") and was formerly in custody at El Paso Service Processing Center ("El Paso"). Doc. 1 ¶¶ 70-71. He has removal proceedings pending in El Paso Immigration Court. *Id*. ¶ 70.

2. Named Plaintiff Ruben Torres Jauregui is a 29-year-old citizen of Cuba who is also currently in ICE custody at Otero and also has removal proceedings pending in El Paso Immigration Court. *Id*. ¶¶ 77-78.

3. Both Named Plaintiffs allege that restricted or deficient telephone service, lack of privacy, and limited availability of free calls to their attorneys hindered their ability to prepare for their removal and asylum hearings, causing them to have to seek continuances and prolong their detention. *Id*. ¶¶ 72-75; 78-82.

4. The Complaint further alleges a host of injuries suffered by the unnamed class members rather than Named Plaintiffs, including:

 a. Lack of free telephone access for indigent class members, *id*. ¶ 7.d;

 b. Lack of free telephone access to make calls to nonprofit legal services providers and government entities, *id*. ¶ 7.e;

 c. Lack of information on telephone access for class members who speak rare languages, *id*. ¶ 7.j;

 d. Lack of three-way calling for class members requiring interpreters, *id*. ¶ 50;

 e. Lack of assistance for class members with disabilities, *id*. ¶ 55; and

 f. Difficulty obtaining counsel, gathering evidence, and seeking "non-immigration attorney assistance" by unrepresented class members, *id*. ¶¶ 56-58.

---

[3] These facts are recited for purposes of this motion to dismiss only. Referencing and characterizing those facts does not waive Defendant's right to contest them later.

5.      In Claim 1, Named Plaintiffs allege that "Defendants have violated Plaintiffs' right to representation of counsel by denying and severely restricting Plaintiffs' ability to make telephone calls to locate, consult with, and retain counsel, and Plaintiffs' ability to communicate with retained counsel." *Id.* ¶ 100.

6.      In Claim 2, Named Plaintiffs allege that "Defendants have violated Plaintiffs' right to a full and fair hearing by denying and severely restricting Plaintiffs' ability to make telephone calls to gather information and obtain evidence in support of their immigration cases." *Id.* ¶ 106.

7.      In Claim 3, Named Plaintiffs allege that "Defendants have violated Plaintiffs' right to petition the government by denying and severely restricting the telephone access necessary to seek legal representation and obtain documents and evidence in support of their applications for immigration benefits." *Id.* ¶ 110.

8.      Named Plaintiffs seek to represent a class of "[a]ll current and future adults who are or will be detained in immigration custody at the El Paso Service Processing Center and the Otero Processing Center." *Id.* ¶ 84.

9.      Named Plaintiffs seek declaratory and injunctive relief, class certification, appointment of class counsel, and attorneys' fees. *Id.* at 28 (Prayer for Relief).

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). If the grounds for dismissal for lack of subject matter jurisdiction are not set forth on the face of the complaint, the court may not presume the truthfulness of the complaint's factual allegations but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *See id.* Reference to such

evidence outside the pleadings does not convert the motion to a Rule 56 motion unless resolution of the jurisdictional question is intertwined with the merits of the case. *Id.*

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if a plaintiff fails to state a claim upon which the court can grant the requested relief. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A plaintiff must furnish "more than labels and conclusions"—"a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. There must be something more than "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

## STATUTORY BACKGROUND

The INA "authorizes noncitizens to obtain direct 'review of a final order of removal' in a court of appeals." *Nasrallah v. Barr*, — S. Ct. —, 2020 WL 2814299, at *4 (quoting 8 U.S.C. § 1252(a)(1)). More specifically, the INA provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5).[4] The INA further provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." *Id.* § 1252(b)(9). Together, these provisions mean that "a noncitizen's various challenges arising from the removal proceeding must be 'consolidated in

---

[4] The INA also requires that an alien "exhaust[] all administrative remedies available to the alien as of right" before a court may review a final order of removal. 8 U.S.C. § 1252(d)(1).

a petition for review and considered by the courts of appeals.'" *Nasrallah*, 2020 WL 2814299, at *4 (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 & n.37 (2001)). This consolidation "expedites judicial review of final orders of removal" by eliminating piecemeal review of issues by the district court. *Id.*

Section 1252(b)(9)'s jurisdiction-channeling provision is "'breathtaking' in scope and 'vise-like' in grip and therefore swallows up virtually all claims that are tied to removal proceedings." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (quoting *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007)). Indeed, "*any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *Id.* (emphasis in original). As the Supreme Court has explained, this provision covers plaintiffs' requests for "review of an order of removal," challenges to "the decision to . . . seek removal," or challenges to "*the process by which . . . removability will be determined.*" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, No. 18-587, — S. Ct. —, 2020 WL 3271746, at *8 (U.S. June 18, 2020) (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2016) (plurality opinion) (alterations in original; emphasis added)).

Section 1252(b)(9)'s reach is not unlimited, however. Courts have held that "it does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (describing this exception as applying to "now-or-never" claims).

## ARGUMENT

### I.   Named Plaintiffs Lack Standing to Bring Claims for Injuries They Have Not Suffered.

It is axiomatic that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). The same holds true where the litigants seek to represent a class: "Prior to

class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole—that unnamed plaintiffs might have a case or controversy is irrelevant." *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). Consequently, "named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010).

Here, Named Plaintiffs allege that various issues with telephone access to communicate with their attorneys resulted in their inability to prepare adequately for removal or asylum hearings. *See* Doc. 1 ¶¶ 70-83. However, absent from the allegations specific to their personal claims is any mention of injury—or imminent threat of future injury—relating to difficulty in obtaining or retaining counsel, inability to gather information or evidence, inability to present evidence at a hearing, lack of attorney representation at hearings, or issues relating to hearings such as custody or bond determinations or redeterminations. *Compare id*. ¶ 9(a)-(d) *with id*. ¶¶ 70-83. Nor do Named Plaintiffs allege that they have experienced injuries because they are indigent, require interpreters, have disabilities, or speak rare languages. *Compare id*. ¶¶ 7, 50, 55 *with id*. ¶¶ 70-83. Moreover, Named Plaintiff Gomez Carranza does not allege any inability to access counsel or evidence while he was housed at El Paso prior to being transferred to Otero. *Id*. ¶ 71.

In *Lewis v. Casey*, the Supreme Court encountered a similar class action involving named plaintiffs seeking to obtain broad injunctive relief based on injuries they did not personally suffer. 518 U.S. 343 (1996). The named plaintiffs, inmates of various prisons in Arizona, alleged that the

prison system deprived them of the right to access the courts and counsel and sought to certify a class consisting of "all adult prisoners who are or will be incarcerated by the State of Arizona Department of Corrections." *Id.* at 346. The district court certified the class and held a bench trial, finding numerous shortcomings with the prison system "ranging from the training of library staff, to the updating of legal materials, to the availability of photocopying services." *Id.*; *see also id.* at 408 n.4 (Stevens, J., dissenting) (noting that a class was certified). The district court issued a permanent injunction that "specified in minute detail the times that libraries were to be kept open, the number of hours of library use to which each inmate was entitled (10 per week), the minimal educational requirements for prison librarians (a library science degree, law degree, or paralegal degree), the content of a videotaped legal-research course for inmates (to be prepared by persons appointed by the Special Master but funded by [Defendant]), and similar matters." *Id.* at 347.

The Supreme Court reversed, noting that the district court had found that only two of the named plaintiffs—both illiterate prisoners—had suffered any actual injury caused by the inadequate prison services (dismissal of one prisoner's complaint and inability of another prisoner to file a complaint). *Id.* at 356. The Court rejected the notion that these illiterate prisoners' injuries were sufficient to create "standing to complain of injuries to non-English speakers and lockdown prisoners," since "standing is not dispensed in gross." *Id.* at 358 n.6. As the Court put it, "If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law." *Id.* Because the district court's injunction addressed "special services or special facilities required by non-English speakers, by prisoners in lockdown, and by the inmate population at large," yet any

such inadequacies "have not been found to harm any plaintiff in this lawsuit," the Court held that these inadequacies "were not the proper object of this District Court's remediation." *Id*. at 358.

Here, similarly, the two Named Plaintiffs have alleged injuries resulting from poor telephone service, but such injuries are limited to their ability to prepare for removal hearings.[5] Assuming their allegations are true, "[t]hese two instances [are] a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief." *Id*. at 359. Because Named Plaintiffs have not personally suffered most of the injuries alleged in the Complaint, they lack standing to bring claims relating to these injuries, regardless of whether other unidentified members of the proposed class may have standing to bring such claims. The Court should therefore dismiss Named Plaintiffs' claims to the extent their personal allegations do not show any injury and limit its review to the issues Named Plaintiffs personally experienced—difficulty with telephone communications with their counsel during their removal proceedings.

## II.     The Court Should Dismiss the Right-to-Counsel Claim Pursuant to Section 1292(b)(9) and Because Named Plaintiffs Have Not Alleged Any Prejudice.

Named Plaintiffs contend that "Defendants have violated Plaintiffs' right to representation of counsel by denying and severely restricting Plaintiffs' ability to make telephone calls to locate, consult with, and retain counsel, and Plaintiffs' ability to communicate with retained counsel." Doc. 1 ¶ 100. Named Plaintiffs allege that the right to counsel derives from the Fifth Amendment's Due Process Clause, the INA (8 U.S.C. §§ 1362; 1229a(b)(4)(A)); the APA (5 U.S.C. § 555(b)); and regulations (8 C.F.R. §§ 1003.16(b); § 1292.5(b)).

---

[5] Although *Lewis* involved convicted prisoners rather than detainees, the Tenth Circuit has applied its reasoning to the pretrial detention context, including the requirement to show an actual injury, *i.e.*, "the denial of such [legal] resources hindered his or her efforts to pursue a nonfrivolous claim" *Friedman v. Kennard*, 248 F. App'x 918, 921 (10th Cir. 2007).

There is no Sixth Amendment right to counsel in removal proceedings, since they are civil rather than criminal. *See Michelson v. I.N.S.*, 897 F.2d 465, 467 (10th Cir. 1990). "Because aliens do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (internal quotation marks omitted). "Beyond this basic protection guaranteed by the Fifth Amendment, any alleged liberty interest must be created by statute or regulation." *Id.* (internal quotation marks omitted).

The INA provides that in removal proceedings, "the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(A); *see also id.* § 1362 (containing substantially similar provision for removal proceedings and appeal proceedings before the Attorney General). The rules of procedure for immigration courts also contain a similar provision. *See* 8 C.F.R. § 1003.16(b). The regulations governing representation in immigration proceedings provide a right of counsel for one who is subject to examination. *See id.* § 1292.5(b).

The Administrative Procedure Act ("APA") provides that "[a] person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative." 5 U.S.C. § 555(b). However, the Supreme Court has explained that "immigration proceedings . . . are not governed by the APA." *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991) (citing *Marcello v. Bonds*, 349 U.S. 302 (1955)). Accordingly, this Court should decline to recognize an independent APA-based right to counsel in immigration proceedings.

A.    **Section 1252(b)(9) Bars District Court Review of Right-to-Counsel Claims Because They Are Tied to Removal Proceedings.**

Although the Tenth Circuit has not addressed this issue, the Courts of Appeals that have considered similar right-to-counsel claims have held that Section 1252(b)(9) bars district court review. For example, the Third Circuit held that claims alleging violation of the statutory right to counsel under 8 U.S.C. § 1362 were, by definition, "tied to the removal proceedings themselves" and therefore, the "court of appeals can redress any deprivation of counsel in the removal proceedings before the alien is removed."[6] *E.O.H.C.*, 950 F.3d at 187-88. Similarly, the Ninth Circuit held that Fifth Amendment due process and statutory right-to-counsel claims "are bound up in and an inextricable part of the administrative process" of removal proceedings and therefore "must be raised through the PFR process" in the court of appeals. *J.E.F.M.*, 837 F.3d at 1032-33. Likewise, the First Circuit held that "the alien's right to counsel is part and parcel of the removal proceeding itself" because it "is inextricably intertwined with[] the administrative process that Congress so painstakingly fashioned." *Aguilar*, 510 F.3d at 13 (dismissing both due process and statutory right-to-counsel claims). In these cases, the courts noted that because right-to-counsel claims can be reviewed as part of the petition for review process, they are not "now-or-never" claims. *See E.O.H.C.*, 950 F.3d at 188; *J.E.F.M.*, 837 F.3d at 1033 (citing right-to-counsel cases brought in PFRs); *Aguilar*, 510 F.3d at 13 (same).

---

[6] Although the Third Circuit held that the petitioners' Fifth Amendment right-to-counsel claim was not barred, the basis for that claim was the government's decision to return the petitioners to Mexico under the Migrant Protection Protocols while deciding whether to grant asylum or remove them to Guatemala. *E.O.H.C.*, 950 F.3d at 187. The court noted that the claim "ar[ose] not from the efforts to remove them to Guatemala, but from those to return them to Mexico in the meantime," and the "constitutional harm . . . could not be remedied after a final order of removal." *Id*. On these unique facts that are not present here, the court concluded that the "now-or-never" exception to Section 1252(b)(9) applied. *Id*.

Numerous district courts have dismissed similar claims by aliens in removal proceedings alleging violation of the right to access counsel and due process, holding that they fall within Section 1252(b)(9)'s broad jurisdictional bar. *See, e.g.*, *Nat'l Immigration Project of Nat'l Lawyers Guild v. Exec. Office of Immigration Review*, No. 1:20-CV-00852 (CJN), 2020 WL 2026971, at *8-9 (D.D.C. Apr. 28, 2020) (dismissing right-to-counsel and due process claims relating to inadequate telephone access at ICE detention facilities because they were "part of the process by which . . . removability will be determined" (quoting *Jennings*, 138 S. Ct. at 841)); *P.L. v. U.S. Immigration & Customs Enf't*, No. 1:19-CV-01336 (ALC), 2019 WL 2568648, at *3-4 (S.D.N.Y. June 21, 2019) (dismissing claims relating to policy to use video teleconferencing in removal proceedings, including violation of right to due process, right to access courts, right to counsel, and evidentiary and cross-examination privileges, since policy arose from removal proceedings); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048-49 (N.D. Cal. 2018) (dismissing Fifth Amendment right-to-counsel claims based on transfers to detention facilities far away from established counsel, noting that the right to counsel is inextricably linked to the removal process); *Vetcher v. Sessions*, 316 F. Supp. 3d 70 (D.D.C. 2018) (dismissing claims relating to lack of access to law library materials at detention facility as "inextricably linked to the order of removal" (internal quotation marks omitted)); *Mochama v. Zwetow*, No. CV 14-2121-KHV, 2017 WL 36363, at *6 (D. Kan. Jan. 3, 2017) (relying on *Aguilar*, dismissing Fifth Amendment right-to-counsel claim alleging that ICE officers refused to allow detainee see his lawyer); *Wheeler v. Unknown Named Agents of ICE*, No. CV 16-6655 DOC (SS), 2016 WL 6126260, at *3 (C.D. Cal. Oct. 20, 2016) (dismissing claim that detention facility violated right to counsel by placing plaintiffs in solitary confinement without access to an attorney before their bond and asylum hearings, since the claims "arise directly from Plaintiffs' removal proceedings and are therefore barred from district court review").

Several district court cases have concluded otherwise, holding that right-to-counsel claims are merely collateral to removal proceedings and therefore can escape Section 1252(b)(9)'s reach.[7] *See, e.g., Arroyo v. United States Dep't of Homeland Sec.*, No. SACV19815JGBSHKX, 2019 WL 2912848, at *3 (C.D. Cal. June 20, 2019); *Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1047-48 (C.D. Cal. 2019) (relying on *Arroyo*). However, these cases appear to be outliers, and several courts have found *Arroyo* unpersuasive. *See Avilez v. Barr*, No. 19-CV-08296-CRB, 2020 WL 570987, at *3 (N.D. Cal. Feb. 5, 2020) (noting that "*Arroyo* is difficult to reconcile with the broad language of *J.E.F.M.*"); *Anaya Murcia v. Godfrey*, No. C19-587-JLR-BAT, 2019 WL 5597883, at *7 (W.D. Wash. Oct. 10, 2019), *report and recommendation adopted*, 2019 WL 5589612 (W.D. Wash. Oct. 30, 2019) ("The Court declines to follow *Arroyo*. The decision is at odds with the three other analogous cases the Court has been able to identify.").

Here, Named Plaintiffs' constitutional and statutory right-to-counsel claim is tied to their ongoing removal proceedings.[8] Named Plaintiff Gomez Carranza alleges that the conditions at

---

[7] Several other cases finding jurisdiction are distinguishable. In a recent case raising a right-to-counsel claim in the immigration detention context, the District Court for the District of Columbia avoided the question whether Section 1252(b)(9) barred the right-to-counsel claim, finding jurisdiction based solely on a substantive due process claim. *See S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533, at *14 (D.D.C. June 17, 2020) ("The Court does not venture an opinion here as to whether it would have jurisdiction over Plaintiff's Fifth Amendment access to counsel claim, as it decides the Motion on the basis of Plaintiff's substantive due process claim."). Named Plaintiffs do not raise a substantive due process claim here. In another case, the District of Oregon found jurisdiction over a right-to-counsel claim after finding that the plaintiffs' removal proceedings had not yet begun, making Section 1252(b)(9) inapplicable. *See Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1076 (D. Or. 2018). Here, both Named Plaintiffs allege they are in removal proceedings.

[8] In an effort to evade Section 1252(b)(9), Named Plaintiffs make generalized allegations about the right to counsel in proceedings such as custody or bond hearings. Doc. 1 ¶¶ 26-27, 66-67. However, because neither Named Plaintiff alleges he has been personally deprived of counsel in such proceedings, Named Plaintiffs lack standing to bring any claims relating to such proceedings. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").

Otero made it difficult for him to "prepare for his final removal hearing" and caused the hearing to be delayed for two months. Doc. 1 ¶¶ 73, 75. Named Plaintiff Torres Jauregui alleges that the conditions caused difficulty while he prepared for "his final merits hearing on his asylum petition," leading him to seek a continuance. *Id.* ¶¶ 79, 81. Because asylum is a form of relief from removal, right-to-counsel claims arising from the asylum context have also been rejected by district courts on grounds of Section 1252(b)(9). *See Rivas Rosales v. Barr*, No. 20-CV-00888-EMC, 2020 WL 1505682, at *7-9 (N.D. Cal. Mar. 30, 2020) (dismissing right-to-counsel claims relating to use of video teleconferencing for asylum hearings because claims "pertain specifically to and *arise from* their removal proceedings" (emphasis in original)); *Wheeler*, 2016 WL 6126260, at *3 (dismissing right-to-counsel claim alleging that plaintiff in solitary confinement could not access her attorney before her asylum hearing). Given that Named Plaintiffs' right-to-counsel claims are inextricably linked to their removal proceedings, Section 1252(b)(9) channels these claims into the court of appeals once properly exhausted, and the district court lacks jurisdiction to entertain them. *See E.O.H.C.*, 950 F.3d at 187-88; *J.E.F.M.*, 837 F.3d at 1029, 1035; *Aguilar*, 510 F.3d at 18.

That Named Plaintiffs seek to challenge alleged policies and practices that apply to entire facilities does not alter the result. As the Ninth Circuit explained in *J.E.F.M.*, the INA "channel[s] review of all claims, including policies-and-practices challenges, through the PFR process whenever they 'arise from' removal proceedings." 837 F.3d at 1035 (quoting 8 U.S.C. § 1251(b)(9)); *see also Aguilar*, 510 F.3d at 14 (noting that a "pattern and practice claim is not a freestanding cause of action but merely a method of proving an underlying legal violation"). Nor does the class action device also save their right-to-counsel claim from the exhaustion and channeling requirements. *See Aguilar*, 510 F.3d at 14 (noting that aliens cannot "dodge the channeling machinery of section 1252(b)(9) simply by draping individual claims in the mantle of

a class action," and that "courts must always be wary of strategic behavior designed to sidestep exhaustion requirements"); *J.E.F.M.*, 837 F.3d at 1038 ("We recognize that a class remedy arguably might be more efficient than requiring each applicant to file a PFR, but that is not a ground for ignoring the jurisdictional statute.").

Named Plaintiffs must raise their right-to-counsel claims in their removal proceedings and properly exhaust them before raising them in a petition for review in the court of appeals. Accordingly, this Court should dismiss Claim 1 for lack of jurisdiction.

**B.    Even If the Court Holds That It Has Jurisdiction over the Right-to-Counsel Claim, Named Plaintiffs Have Failed to Allege Any Prejudice.**

Although aliens in a removal proceeding are entitled to due process under the Fifth Amendment, "due process is not equated automatically with a right to counsel." *Michelson*, 897 F.2d at 467. Rather, the plaintiff "must demonstrate prejudice which implicates the fundamental fairness of the proceeding." *Id*. The Tenth Circuit requires a showing that "there is a reasonable likelihood" that the outcome would have been different. *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004) (en banc).

Here, Named Plaintiffs have not alleged that they received an adverse decision as a result of any communication issues with their attorneys, or even that "they lacked representation from counsel of their choosing at any hearing." *Mateo v. Holder*, 506 F. App'x 756, 759 (10th Cir. 2012). Rather, they allege that as a result of these issues, they have been allowed to delay their proceedings in order to have more time to prepare. Doc. 1 ¶¶ 75, 81. While they may have suffered inconveniences that "limit[ed] the effectiveness of communications with counsel," Named Plaintiffs have not alleged that these inconveniences were "'tantamount to the denial of counsel.'" *Lyon v. U.S. Immigration & Customs Enf't*, 171 F. Supp. 3d 961, 975-76 (N.D. Cal. 2016) (quoting *Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005)).

As the Supreme Court noted in *Lewis*, a prisoner alleging denial of the right to access courts and counsel "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." 518 U.S. at 351. Rather, he "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," such as dismissal of a complaint he drafted for "failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known," or inability to file a complaint in the first place because he "was so stymied by inadequacies of the law library." *Id*. Because Named Plaintiffs have failed to allege any prejudice rising to the level of a due process violation, the Court should dismiss Claim 1 for failure to state a claim.

### III.    The Court Lacks Jurisdiction over Named Plaintiffs' Claim Relating to the Right to a Full and Fair Hearing, and Named Plaintiffs Have Not Alleged Any Prejudice.

Named Plaintiffs allege that the telephone issues at Otero and El Paso has violated their Fifth Amendment due process right to a full and fair hearing in removal proceedings, including a reasonable opportunity to gather and present evidence. Doc. 1 ¶ 103. Named Plaintiffs further allege violations of their statutory right to gather and present evidence in connection with their removal proceedings, 8 U.S.C. § 1229a(b)(4)(B), as well as their right to a full and fair custody redetermination hearing, *id*. § 1226(a). Doc. 1 ¶¶ 104-05.

An alien "is entitled to a full and fair removal hearing that comports with due process." *Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017). To prevail on a due process claim, the alien "must establish both that he was deprived of due process and that that deprivation prejudiced him." *Id*. An alien in a removal proceeding "shall have a reasonable opportunity to

examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B).[9]

### A.    Named Plaintiffs Do Not Allege Any Injury Relating to a Lack of a Full and Fair Hearing and Therefore Lack Standing to Bring Claim 2.

Named Plaintiffs contend that Defendants' policies and practices "deny and severely restrict their abilities . . . to gather information and evidence necessary for their cases, and to obtain fair hearings while in civil, immigration custody." Doc. 1 ¶ 2. However, Named Plaintiffs make no allegations that phone issues hindered them from gathering information and evidence or rendered any hearing unfair. Indeed, the allegations regarding gathering evidence refer to "those Plaintiffs who cannot afford an attorney and are not able to retain *pro bono* counsel," for whom "telephone contact with the outside world is essential to gather the evidence and government documents necessary to defend against removal charges, locate witnesses, seek relief from removal, including protection from persecution or torture, and do other things necessary to represent themselves in legal proceedings." *Id*. ¶ 5; *see also id.* ¶ 27 (noting that if detained individuals "do not have representation, they must independently gather information and evidence in connection with bond redetermination hearings").

Here, both Named Plaintiffs are represented by counsel, who presumably has the ability to gather information and evidence on their clients' behalf. Tellingly, the individual allegations do not include any examples of how inadequate phone service impaired Named Plaintiffs' ability to gather evidence. Furthermore, they have not alleged any due process violations at any hearings.

---

[9] Although Named Plaintiffs cite 8 U.S.C. § 1226(a) for the proposition that they are entitled to a full and fair custody redetermination hearing, this provision provides that an alien may be arrested and detained pending removal, and that the Attorney General may release the alien on bond or conditional parole. It does not contain any language regarding the right to a full and fair hearing. In any event, because Plaintiffs lack standing regarding any Section 1226(a) hearings, Defendants will focus on Named Plaintiffs' claims relating to the right to a full and fair removal hearing.

Because Plaintiffs have not personally suffered any injury relating to the right to a full and fair hearing, they lack standing to bring Claim 2.

**B.    Section 1252(b)(9) Deprives This Court of Jurisdiction over the Full-and-Fair Hearing Claim.**

As with Named Plaintiffs' right-to-counsel claim, the full-and-fair hearing claim is inextricably linked to their removal proceedings because it relates to "*part of the process by which their removability will be determined.*" *Jennings*, 138 S. Ct. at 841 (plurality opinion) (emphasis added). Other courts have dismissed similar due process claims pursuant to Section 1252(b)(9). *See, e.g.*, *Aguilar*, 510 F.3d at 18 ("To the extent that [the plaintiffs] arguably have raised procedural due process claims above and beyond their right-to-counsel claims—such as their vaguely articulated plaints about difficulties in calling witnesses and in presenting evidence at the removal proceedings—we find that section 1252(b)(9) mandates their exhaustion."); *P.L.*, 2019 WL 2568648, at *8 ("Plaintiffs' access-to-counsel and due process claims arise from the course of removal hearings, placing them within § 1252(b)(9)'s broad jurisdictional bar."); *Vetcher*, 316 F. Supp. 3d at 77 ("At bottom, Vetcher's claims that he has been denied due process during his removal proceedings are enmeshed with his removal proceedings and can be adequately reviewed through a petition for review in the Fifth Circuit. They must, therefore, proceed through the judicial-review process Congress supplied in § 1252."). Accordingly, the Court should dismiss Claim 2 pursuant to Section 1252(b)(9).

**C.    Section 1229a(b)(4)(B) Does Not Confer a Statutory Right to Gather Information and Evidence for Removal Proceedings.**

Named Plaintiffs cite 8 U.S.C. § 1229a(b)(4)(B) as conferring a "statutory right to gather and present evidence in connection with their removal proceedings under the INA." Doc. 1 ¶ 104. Although this provision does provide an alien the right "to *present* evidence on the alien's own behalf," it does not mention any right to *gather* evidence in advance of the hearing. 8 U.S.C.

§ 1229a(b)(4)(B (emphasis added). Accordingly, if the Court concludes it has subject matter jurisdiction, it should dismiss the claim under Section 1229a(b)(4)(B) for failure to state a claim. *See Lyon*, 171 F. Supp. 3d at 977 (concluding that the INA does not "provide for a general right to investigate and gather evidence in advance of and in preparation for a removal hearing").

### D. Named Plaintiffs Have Failed to Allege Prejudice From Any Inability to Use the Telephone to Gather Information and Evidence.

To prevail on their Fifth Amendment full-and-fair hearing claim, Named Plaintiffs must show prejudice, *i.e.*, "a reasonable likelihood" that the outcome of the proceeding would have been different. *Aguirre-Tello*, 353 F.3d at 1209. Here, Named Plaintiffs do not allege any prejudice because their hearings were continued or delayed and thus had not occurred at the time they filed the Complaint. Doc. 1 ¶¶ 75, 81. Absent any allegation of prejudice, Named Plaintiffs cannot state a Fifth Amendment due process claim, and the Court should dismiss the constitutional full-and-fair hearing claim under Rule 12(b)(6).

### IV. Named Plaintiffs' First Amendment Claim Is Duplicative of Their Other Claims and Should Be Dismissed for the Same Reasons.

Named Plaintiffs' third claim alleges that "Defendants have violated Plaintiffs' right to petition the government by denying and severely restricting the telephone access necessary to seek legal representation and obtain documents and evidence in support of their applications for immigration benefits." Doc. 1 ¶ 110.

Although the Tenth Circuit does not appear to have addressed the First Amendment right to petition the government for redress of grievances in the immigration context, other courts of appeals have held that the right extends to the right to petition for asylum. *See, e.g.*, *Maldonado-Perez v. I.N.S.*, 865 F.2d 328, 332 (D.C. Cir. 1989); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1036 (5th Cir. 1982); *see also Nat'l Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 595 (9th Cir. 1992), *as amended on denial of reh'g* (June 18, 1993) (noting that "the First

Amendment extends to the right to petition an administrative agency"). Where the claim relates to meaningful access to the administrative process, "the focus of the First Amendment analysis is essentially the same as that under the Due Process Clause." *Nat'l Ass'n of Radiation Survivors*, 994 F.2d at 595.

### A.   Named Plaintiffs Lack Standing to Raise Their First Amendment Claim Because They Do Not Allege Any Injury Relating to Inability to Obtain Counsel or Evidence.

Named Plaintiffs' First Amendment claim is duplicative of their Fifth Amendment claims alleging violation of the right to counsel and the right to a full and fair hearing. However, because Named Plaintiffs do not personally allege an inability to obtain counsel or evidence, they have not suffered the injury they allege to support their First Amendment claim. Doc. 1 ¶ 110. Because they cannot rely on the experiences of unnamed class members to fulfill the injury requirement, the Court should dismiss Claim 3 for lack of standing. *See Donelson v. United States*, 730 F. App'x 597, 601 (10th Cir. 2018) (holding that "a named plaintiff must possess standing as to each individual claim asserted in a complaint").

### B.   This Court Lacks Jurisdiction over the First Amendment Claim Because of Section 1252(b)(9).

To the extent Named Plaintiffs' First Amendment claim relates to their personal allegations relating to right to counsel and the right to a full and fair hearing in removal proceedings, the claim also falls within the ambit of Section 1252(b)(9) for the same reasons set forth above. Consequently, Named Plaintiffs must first exhaust this claim and then consolidate it with all their other claims arising out of removal proceedings in a petition for review filed in the court of appeals. The Court should dismiss the First Amendment claim for lack of jurisdiction.

## CONCLUSION

The Court should dismiss this case for lack of subject-matter jurisdiction, or alternatively, for failure to state a claim.

Respectfully submitted.

JOHN C. ANDERSON
United States Attorney


*/s/ Christine H. Lyman 6/29/2020*
CHRISTINE H. LYMAN
Assistant United States Attorney
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
505-346-1532
Christine.Lyman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, Defendants filed through the United States District Court CM/ECF System the foregoing document, causing it to be served by electronic means on all counsel of record.

*/s/ Christine H. Lyman 6/29/2020*
CHRISTINE H. LYMAN
Assistant United States Attorney