**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

FRANKLIN GOMEZ CARRANZA and
RUBEN TORRES JAUREGUI,

        Plaintiffs,

    v.                               No. 20-cv-00424 KG/KRS

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; MATTHEW T.
ALBENCE, ACTING DIRECTOR OF ICE;
DEPARTMENT OF HOMELAND
SECURITY; CHAD F. WOLF, ACTING
SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY; COREY A. PRICE,
FIELD OFFICE DIRECTOR FOR THE EL
PASO FIELD OFFICE,

        Defendants.

**DEFENDANTS' OPPOSITION TO NAMED PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION (DOC. 34)**

The Court should deny Named Plaintiffs' Motion for a Preliminary Injunction (Doc. 34).

Because the Court has not certified a class, any injunctive relief must inure to the benefit of the

Named Plaintiffs only. However, Named Plaintiffs cannot meet the requirements for a preliminary

injunction, especially in light of the heightened burden that applies where, as here, the request for

relief mandates action (rather than prohibiting it), changes the status quo, and grants all the relief

that the moving party could expect from a trial win.

First, Named Plaintiffs are unlikely to succeed on the merits of their claims because the

Court lacks jurisdiction under 8 U.S.C. § 1252(b)(9), and they have failed to allege the required

element of prejudice to state a due process claim. *See generally* Doc. 23. Second, Named Plaintiffs

have not shown that they will suffer imminent, irreparable harm if the injunction is not issued.

Named Plaintiff Franklin Gomez Carranza is still released on bond and does not require any

injunctive relief. Although Named Plaintiff Ruben Torres Jauregui did not prevail in his removal hearing two months ago, there is no indication in the record that the telephone issues alleged in the motion caused any prejudice or will impact any future proceedings. Third, Named Plaintiffs cannot show that a preliminary injunction would be in the public interest given that they seek to subvert the streamlined judicial-review process enacted by Congress in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Furthermore, while Named Plaintiffs contend that Defendants' own policies require them to provide unlimited, free calls to any legal provider, there is no such requirement in any of the documents they cite.

## **FACTUAL BACKGROUND**

This is a putative class action challenging a myriad of allegedly deficient telephone practices at Otero Country Processing Center ("Otero") and El Paso Service Processing Center ("El Paso"). *See* Doc. 1 ¶ 10. However, because Named Plaintiffs mention only Otero in their Motion for a Preliminary Injunction, *see* Doc. 34 at 2, and that is where Named Plaintiff Torres Jauregui is located, Defendants will focus solely on Otero. The Court has not yet ruled on Named Plaintiffs' Motion for Class Certification. Doc. 4. As such, only Named Plaintiffs' individual claims are before the Court at this time.

### **A.    Named Plaintiff Torres Jauregui's Removal Proceedings**

Named Plaintiff Torres Jauregui alleged in the Complaint that his attorney was unable to visit him in person in March due to lack of personal protective equipment. *See* Doc. 1 ¶ 80. His attorney contends that as a result of telephonic difficulties at Otero, she has "been unable to set up confidential legal calls" with him "to prepare him [for] his removal proceedings." Doc. 34-7 (Cerneka Decl.) ¶ 4. According to the Complaint, "[d]ue to the constraints that Defendants placed on Plaintiff Torres Jauregui's ability to communicate with his counsel . . . his [May 6, 2020]

hearing has been delayed for an additional month . . . in a highly unsafe environment." Doc. 1 ¶ 82. According to the Immigration Judge ("IJ"), however, his hearing was continued because he was in medical quarantine on May 6. *See* IJ Decision, attached as Exhibit A5, at 2.

His hearing on June 1, 2020, was further delayed when his counsel provided a last-minute mental health evaluation that called into question Named Plaintiff Torres Jauregui's ability to testify. *See id.* His counsel testified: "In my experience, working with Mr. Jauregui by telephone, . . . sometimes his recall is fine, and he is right there with me. And sometimes he's more emotional and very anxious. And so, we have talked about it, and we talked about it before the last time this was scheduled. . . . And it was only last week that this came up again." June 1, 2020 Hearing Transcript, attached as Ex. A3, at 3 ¶¶ 15-21. Neither Named Plaintiff Jauregui nor his attorney complained about inability to communicate over the telephone to prepare for the hearing.[1] The IJ continued the hearing until June 30 to allow the government to evaluate him based on the new mental health evidence and also because the IJ was ill. Ex. A3 at 2.

On June 30, 2020, Named Plaintiff Torres Jauregui had his removal hearing. The IJ asked him: "[W]hen you were preparing your asylum application and your statement, were you able to— was Ms. Sernaca [*sic*] able to assist you in doing that?" June 30, 2020 Hearing Transcript, attached as Ex. A4, at 2 ¶¶ 23-24. He responded, "Yes." *Id.* at 3 ¶ 1. When asked again whether he was able to review the application and statement, he reiterated that he was, explaining that "lately, I couldn't have a lot of contact with my attorney because of the COVID-19, and we did it over the phone."

---

[1] By June 1, 2020, Ms. Cerneka had apparently obtained a face mask. *See* Ex. A3 at 2 ¶¶ 2, 6. Given that lack of personal protection equipment no longer appears to be an obstacle for her, and Otero provides such equipment if needed, it is unclear why she has been unable to visit Named Plaintiff Torres Jauregui in person at Otero if telephone communications are so unreliable. Renteria Decl. ¶¶ 34, 35 (noting that Named Plaintiff Torres Jauregui has not received any requests for visitors since March 2020).

*Id*. at 6 ¶¶ 17-18. His attorney also mentioned a phone call she received from Named Plaintiff Torres Jauregui on the weekend of June 5. *See id*. at 4 ¶ 22-23.

At no point during the hearing did Named Plaintiff Torres Jauregui or his counsel complain that they were unprepared, nor did they seek a continuance. In fact, his counsel indicated that she was "confident that we can proceed today." *Id*. at 5 ¶ 6. At the close of argument, when asked if there was anything else important that had not already been discussed, his counsel said there was not. *Id*. at 7 ¶¶ 5-8. However, the Motion for Preliminary Injunction claims that Named Plaintiff Torres Jauregui "was unable to prepare for his removal proceedings because he was not able to call his attorney, nor was his attorney able to set up a free legal call through ICE." Doc. 35 at 27.

In her oral decision, the IJ found that "[t]he respondent is represented by counsel and has been since December 12th, 2019, a period of over six months. . . . He has a rational understanding of the proceedings and has been able to consult with and assist his attorney." Ex. A5 at 3. Indeed, the IJ described the abundance of supporting evidence for his asylum claim: "He provided a five-page, single-spaced, detailed written statement with the assistance of his attorney. Additionally, he provided 70 pages of supporting documents specific to himself, in support of his case, as well as 165 pages of country condition evidence." *Id*. Consequently, despite the mental health concerns raised by counsel, the IJ concluded that "he has shown that he is able to meaningfully participate in these proceedings, especially as he has had [the] benefit of counsel for the past six months." *Id*.

The IJ made an adverse credibility finding because of material omissions and inconsistencies in his statements to the asylum officer and discrepancies between his account of alleged political persecution with the documentary evidence submitted by his relatives. *Id*. at 4. The IJ further found that "respondent has not credibly shown that the harm he suffered rises to the level of persecution. The minor injuries he claimed he received when assaulted by the police over

19 [months] ago resulted in no serious injury and consisted of a small cut and bruises. He required no medical treatment." *Id*. at 5.

Furthermore, she concluded that "even if the court would otherwise find the respondent's case credible, and if the respondent was otherwise eligible for asylum, the court would have denied the respondent's application as a matter of discretion." According to the IJ, Named Plaintiff Torres Jauregui refused to comply with a Customs and Border Patrol Officer's order to stop while he attempted entry into the U.S., and "had to be pepper sprayed" after he "apparently struck or pushed" her. *Id*. at 6-7. The IJ found that this incident was "an extremely serious matter" that "speaks to the respondent's complete disregard [for] the laws of the United States." *Id*. at 7.

Because the IJ found Named Plaintiff Torres Jauregui ineligible for asylum, she held that he could not meet the more stringent standard for withholding of removal. *Id*. Furthermore, she held that he was ineligible for relief under the Convention Against Torture based on the adverse credibility determination and his inability to show he was tortured or would be subject to torture by the Cuban government. *Id*. at 7-8. Having denied all forms of requested relief, the IJ ordered Named Plaintiff Torres Jauregui removed to Cuba. *Id*. at 9.

After reading her decision, the IJ admonished Named Plaintiff Torres Jauregui that he would need to "continue to cooperate with [his] attorney so that she can assist [him] in preparing that appeal" and that he would need to "send it out in plenty of time" to avoid missing the deadline. *Id*. at 9 ¶¶ 19-24. Although the IJ gave him several opportunities to raise any concerns after issuing her decision at the hearing, neither he nor his attorney did so. *Id*. at 10 ¶¶ 3-4, 12-14.

Named Plaintiff Torres Jauregui's notice of appeal does not mention any issues with access to counsel or inability to present evidence at the hearing. *See* Notice of Appeal, attached as Exhibit A6, at 3.

B.      **Telephone Practices at Otero**

Otero abides by the 2011 Performance Based National Detention Standards ("PBNDS") provisions governing telephone access. *See* Decl. of Jose Renteria, attached as Exhibit A, ¶ 4; 2011 PBNDS § 5.6, attached as Exhibit A1. The 2011 PBNDS provide for free legal phone calls to certain providers approved by U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"). Ex. A1 at 1, 3-4. Calls to other legal providers are to be "direct or free." *Id.* at 3. Direct calls are charged at the normal rate of 7 cents per minute. Renteria Decl. ¶ 11. Indigent detainees are permitted free calls, however. *Id.* ¶ 12. Since April 2020, ICE has been providing 13 free, ten-minute calls to each detainee per week. *Id.* ¶ 13. These free calls are one of the suggestions set forth in the ICE ERO COVID-19 Pandemic Response Requirements. *See* Pandemic Response Requirements, attached as Exhibit A2, at 2.

Otero provides five phones and five tablets per housing unit, or one per every ten detainees. *Id.* ¶ 7. The telephones are separated by panels to ensure privacy, and officers are able to assist detainees in ensuring that legal calls are private. *Id.* ¶ 8. Detainees have access to instructions on how to ensure attorney calls are unmonitored and unrecorded, which requires verification by Otero's outside telephone services provider (Talton). *Id.* ¶ 9. A G-28 form is not required. *Id.* Neither Named Plaintiff availed himself of this procedure. *Id.*

Although social visits have been suspended since March 13, 2020, in-person legal visitation is still available at Otero, seven days a week and 24 hours per day. *Id.* ¶ 33. Attorneys who visit in person must pass a COVID-19 screening and wear personal protective equipment consisting of a face mask and gloves. *Id.* Otero provides personal protective equipment if the visitor needs it. Neither Named Plaintiff received any legal visitation requests after March 13, 2020. *Id.* ¶¶ 35, 49. Named Plaintiff Torres Jauregui called and connected with his counsel

96 times for a total of 913 minutes between March 13, 2020, when social visitation was suspended,

and September 8, 2020. *Id*. ¶ 33; Torres-Jauregui Call Log, attached as Exhibit A7, at 3.

## STANDARD OF REVIEW

Preliminary relief is "never awarded as of right" because it is "an extraordinary remedy

that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*

*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain preliminary relief, a movant must

establish each of the following prerequisites:

    (1)    a substantial likelihood of prevailing on the merits;

    (2)    irreparable harm unless the injunction is issued;

    (3)    that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and

    (4)    that the injunction, if issued, will not adversely affect the public interest.

*Diné Citizens Against Ruining Our Env't*, 839 F.3d 1276, 1281 (10th Cir. 2016) (line breaks

added). Because the government is a party, the third and fourth factors merge. *Nken v. Holder*, 556

U.S. 418, 435 (2009).

These prerequisites do not establish a balancing test, as Named Plaintiffs assert, relying on

a district court decision that predated *Diné Citizens* by nine months. *See* Doc. 35 at 19-20 (citing

*Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1026, 1033 (D.N.M. 2016)). Rather, as the

Tenth Circuit clarified in *Diné Citizens*, each must be satisfied independently, and the strength of

one cannot compensate for the weakness of another. 839 F.3d at 1282 ("Under *Winter*'s rationale,

any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the

standard test is impermissible."); *see also Woods v. Bd. of Cty. Comm'rs*, No. 1:20-CV-00529-

PJK-LF, 2020 WL 4035182, at *5 (D.N.M. July 17, 2020), *report and recommendation adopted*,

2020 WL 4464912 (Aug. 4, 2020) (noting that in *Diné Citizens*, the Tenth Circuit recognized that a "'sliding scale' test was 'inconsistent' with Supreme Court precedent").

Moreover, preliminary relief that alters the status quo, mandates action rather than prohibits it, or "afford[s] the movant all the relief that it could recover at the conclusion of a full trial on the merits," is "specifically disfavored." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (internal quotation marks omitted). Hence, a heightened burden applies in such cases, and a court is tasked with more closely scrutinizing the movants' claims to ensure that preliminary relief is warranted. *Id*. Because Named Plaintiffs' request for preliminary relief meets all three disfavored categories, they must meet this heightened burden as to each prerequisite.

## ARGUMENT

### I.    Named Plaintiffs Have Not Established a Likelihood of Success on the Merits.

Named Plaintiffs cannot show entitlement to preliminary relief because they have not established a likelihood of success on the merits of their claims. "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (internal quotation marks omitted). "Although a showing of 'likelihood' is not as demanding a burden as 'certainty' of success, the movants must show more than a mere possibility of success. Plaintiffs as movants must provide facts and theories sufficiently detailed to present a prima facie case." *Begay-Platero v. Gallup McKinley Cty. Sch. Dist.*, No. 18-CV-00861-PJK-SCY, 2019 WL 2008888, at *2 (D.N.M. May 7, 2019) (citing *Diné Citizens*, 839 F.3d at 1282; *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016)).

"For there to be a substantial likelihood of success on the merits, the Court must have jurisdiction over the matter." *Bank of New York, as Tr. v. Mehner*, 375 F. Supp. 2d 1316,

1319 (D.N.M. 2005). As Defendants argued in their motion to dismiss, the Court lacks jurisdiction over this case. *See generally* Doc. 23. Named Plaintiffs lack standing to bring claims exceeding the scope of the injuries they personally suffered and should be limited to challenging difficulty communicating with their counsel to prepare for their removal hearings. *See Lewis v. Casey*, 518 U.S. 343, 359 (1996) (holding that injuries suffered by two prisoners relating to access to legal materials were "a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief"). However, the claims for which they have standing fall within the ambit of 8 U.S.C. § 1252(b)(9), which channels claims arising from removal proceedings to the courts of appeals and divests the district courts of jurisdiction. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032-33 (9th Cir. 2016) (holding that Fifth Amendment due process and statutory right-to-counsel claims "are bound up in and an inextricable part of the administrative process" of removal proceedings and therefore "must be raised through the PFR process" in the court of appeals).

In addition, "for an injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand a motion to dismiss for failure to state a claim." *Ishoo v. Bd. of Regents Univ. of New Mexico*, No. CV-06-0747 MV/ACT, 2007 WL 9729216, at *14 (D.N.M. Sept. 29, 2007). To state a claim for due process violations in immigration proceedings,[2] a plaintiff must allege "prejudice which implicates the fundamental fairness of the proceeding." *Michelson v. I.N.S.*, 897 F.2d 465, 468 (10th Cir. 1990). In other words, the plaintiff must show "a reasonable likelihood" that the outcome of the proceeding would have been different. *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004) (en banc). Here, Named Plaintiffs have failed to allege that there was a reasonable likelihood that any adverse outcome

---

[2] This standard would also apply to Named Plaintiffs' First Amendment claim, which is based on the right to petition an administrative agency. See *Nat'l Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 595 (9th Cir. 1992), *as amended on denial of reh'g* (June 18, 1993).

would have been different without the communication difficulties. At most, they allege that in one case involving an unnamed detainee who had failed his reasonable fear interview and sought representation for a request for reconsideration, "[t]he problems *may have contributed* to our lack of success before the [immigration judge] and with the [request for reconsideration]." Doc. 34-3 (Brooks Decl.) ¶ 8(j) (emphasis added). It is unclear, however, why the declaration obtained from the detainee was "sub-par," Doc. 35 at 27, despite over 2.5 hours in phone time with him.[3] Doc. 34-3 ¶¶ 8(a)-(d). Although Named Plaintiff Torres Jauregui was ordered removed, tellingly, there is no allegation that difficulties in reaching his counsel affected the outcome of his proceeding or that his counsel was unable to provide effective representation at the hearing. Doc. 35 at 27; *see also* Doc. 34-7 ¶ 4. He merely invites the Court to infer a cause-and-effect relationship. As explained above, the record in his removal proceedings shows that he and his counsel communicated numerous times over the phone and that he supplied ample evidence at the hearing. Given the IJ's adverse credibility determination and other findings, there is no reasonable likelihood he would have prevailed if he had more time to talk to his attorney over the telephone.

Named Plaintiffs ignore all of the arguments raised in Defendants' motion to dismiss, choosing to rely on favorable decisions in other cases to establish likelihood of success. According to Named Plaintiffs, "citation of prior case law on the same issue, resolved in petitioner's favor, is sufficient to show a substantial likelihood of success on the merits." Doc. 35 at 19 n.7 (citing *Woods*, 2020 WL 4035182, at *8). Named Plaintiffs' reliance on *Woods* is misplaced, however, as

---

[3] Another Las Americas attorney apparently had little difficulty establishing regular communication with an Otero detainee in July 2020. According to her declaration, they "spoke approximately twice a week through the whole month of July." *See* Decl. of Rosa de Jong, *Gomez-Arias v. ICE*, No. 20-cv-857-MV-KK, Doc. 1 at 61 (Ex. 7) ¶¶ 4-5. A legal intern was also able to speak with him regularly. *See id.* at 66-68 (Ex. 8) ¶¶ 12-26 (Decl. of Mattie Armstrong) (describing ten conversations with the detainee throughout the summer of 2020).

the defendants conceded that "they did not have any cases" that were favorable to their position. 2020 WL 4035182, at *8. Because *all* of the cases on the identical issue favored the plaintiff, the court found that the plaintiff "met the heightened burden of making a strong showing that this factor tilts in her favor." *Id*.

Here, by contrast, there are numerous cases holding that 8 U.S.C. § 1252(b)(9) vests the courts of appeals with exclusive jurisdiction over access-to-counsel claims asserted by detainees in removal proceedings. *See, e.g*., *Nat'l Immigration Project of Nat'l Lawyers Guild v. Exec. Office of Immigration Review*, No. 1:20-CV-00852 (CJN), — F.3d —, 2020 WL 2026971, at *8-9 (D.D.C. Apr. 28, 2020); *see also* Doc. 23 at 12-13 (citing cases). Indeed, one of the two cases upon which Named Plaintiffs principally rely, *S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.,* No. CV 18-760 (CKK), 2020 WL 3265533 (D.D.C. June 17, 2020), *appeal docketed* No. 20-5257 (D.C. Cir. Aug. 26, 2020) ("*SPLC*")), declined ruling on the access-to-counsel claims, noting that "[t]he question of whether the Court would have jurisdiction over Plaintiff's access to counsel claim is a complicated one and the authorities are in equipoise." *Id*. at *14 n.4 (citing cases). "Equipoise" does not rise to the level of a "strong showing" of likelihood to succeed on the merits.

Furthermore, *SPLC* is of no assistance to Named Plaintiffs because the court granted relief based solely on a theory not raised in this case—that the "conditions at . . . four detention centers are so restrictive that they are punitive in violation of the Fifth Amendment's substantive due process clause." 2020 WL 3265533, at *16. As the court explained: "The Court does not venture an opinion here as to whether it would have jurisdiction over Plaintiff's Fifth Amendment access to counsel claim, as it decides the Motion on the basis of Plaintiff's substantive due process claim." *Id*. at *14. The *SPLC* court's substantive due process analysis therefore has no bearing on whether Named Plaintiffs' claims—based on the statutory right to counsel, statutory right to a full and fair

hearing, procedural due process, and First Amendment right to petition for redress of grievances—are likely to succeed on the merits. *See Acosta Ortega v. United States Immigration & Customs Enf't*, No. 2:20-CV-00522-KWR-KBM, 2020 WL 4816373, at *9 (D.N.M. Aug. 19, 2020) ("The Court may not order preliminary injunctive relief on a claim not raised in the complaint.").

Named Plaintiffs cite only one case with similar facts and claims arising out of telephone issues at another detention facility: *Torres v. United States Dep't of Homeland Sec.*, No. EDCV 18-2604 JGB (SHKx), 2020 WL 3124216 (C.D. Cal. Apr. 11, 2020), *appeal docketed* No. 20-55647 (9th Cir. June 24, 2020). As Defendants previously noted, Doc. 23 at 13, the case upon which the *Torres* court primarily relied in determining it had jurisdiction notwithstanding Section 1252(b)(9) was *Arroyo v. United States Dep't of Homeland Sec.*, No. SACV19815JGBSHKX, 2019 WL 2912848, at *3 (C.D. Cal. June 20, 2019). *See Torres*, 411 F. Supp. 3d 1036, 1047-48 (C.D. Cal. 2019). The *Torres* court's reliance on *Arroyo* is not surprising given that the same judge decided both cases. However, several other courts within the Ninth Circuit have refused to follow *Arroyo* because it contravenes the Ninth Circuit's decision in *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). *See, e.g.*, *Avilez v. Barr*, No. 19-CV-08296-CRB, 2020 WL 570987, at *3 (N.D. Cal. Feb. 5, 2020); *Anaya Murcia v. Godfrey*, No. C19-587-JLR-BAT, 2019 WL 5597883, at *7 (W.D. Wash. Oct. 10, 2019), *report and recommendation adopted*, 2019 WL 5589612 (W.D. Wash. Oct. 30, 2019). It remains to be seen whether the Ninth Circuit will reverse *Torres* on appeal.

The other access-to-counsel cases cited by Named Plaintiffs, *see* Doc. 35 at 23, are also unhelpful. Two of these cases involved plaintiffs who were not in removal proceedings, and thus Section 1252(b)(9) did not bar their claims. For example, in *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1077 (D. Or. 2018), the court held that Section 1252(b)(9) did not apply because the plaintiffs were "civil immigrant detainees whose removal proceedings have not yet been

initiated." The second case, *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1511 (C.D. Cal. 1988), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990), involved aliens who were not in removal proceedings because they were coerced into accepting voluntary departure in lieu of a deportation hearing. In any event, *Orantes-Hernandez* was decided before Section 1252(b)(9) was enacted as part of IIRIRA in 1996. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 (2020) (explaining statutory history). While *Rodriguez-Castillo v. Nielsen*, No. 5:18-CV-01317-ODW-MAA, 2018 WL 6131172 (C.D. Cal. June 21, 2018), did involve aliens in removal proceedings, the court's decision granting a temporary restraining order two days after the application did not describe what claims the plaintiffs had alleged, much less engage in any legal analysis. It is therefore unpersuasive.

The First Amendment cases cited by Named Plaintiffs, *see* Doc. 35 at 18-19, fare no better. Other than *Torres*, none of them involved immigrant detainees in removal proceedings alleging access-to-counsel claims. For example, *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 932, n.35 (W.D. Tex. 2018), did not involve access-to-counsel claims, and most of the other cases involved pretrial detainees who were not aliens in removal proceedings subject to Section 1252(b)(9), *see Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986); *Daniels v. Morris Cnty. Corr. Facility*, No. CIV.A. 06-2460(DMC), 2006 WL 2524177, at *5 (D.N.J. Aug. 30, 2006); *Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976); *Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984). Most inapposite of all is *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 547-48 (2001), which involved a First Amendment challenge to the government's refusal to allow the Legal Services Corp. to fund litigation challenging welfare laws. That case had nothing to do with the right of immigrants to petition for redress of grievances, access to counsel, or telephone service at detention facilities, but rather funding restrictions that served to regulate free speech.

Named Plaintiffs have not addressed, let alone overcome, the concerns Defendants raised in their motion to dismiss. Although Named Plaintiffs "do not assert that they have a standalone right to telephone access and that the mere subpar telephone infrastructure is the injury," Doc. 29 at 15, they have failed to show a causal relationship between the alleged telephone deficiencies and any actual prejudice suffered during their immigration proceedings. Because they have not made a strong showing of likelihood of success on the merits, the Court should deny the motion for preliminary relief for this reason alone. *See Roberts v. Generation Next, LLC*, No. 18-CV-00975-WJ-LF, 2019 WL 2340960, at *2 (D.N.M. June 3, 2019) ("Since the Court has concluded that Plaintiff cannot show a substantial likelihood of success on the merits, the Court need not engage in further analysis on the other elements necessary for a party to obtain injunctive relief.").

## II.     Named Plaintiffs Have Not Shown They Will Suffer Imminent, Irreparable Harm.

Named Plaintiffs also fail to satisfy the requirement of showing irreparable injury if their requested relief is not granted. To constitute irreparable harm, the injury "must be both certain and great," and "it must not be merely serious or substantial." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262-63 (10th Cir. 2004) (internal quotation marks omitted). Moreover, a preliminary injunction is warranted only if "the injury complained of is of such *imminence* that there is a clear and present need for equitable relief." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted; emphasis in original). Conclusory or speculative allegations are not enough to establish a likelihood of irreparable harm. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

Here, Named Plaintiff Torres Jauregui has not shown he will suffer future irreparable harm unless a preliminary injunction issues. While he was ordered removed on June 30, 2020,[4] he does

---

[4] Named Plaintiffs did not seek preliminary relief until nearly four months after filing the complaint, Doc. 1, and two months *after* Named Plaintiff Torres Jauregui's removal hearing. The

not allege imminent future harm such as inability to prosecute his appeal to the Board of Immigration Appeals. *See* Doc. 34-7 (Cerneka Decl.) ¶ 4. "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier*, 427 F.3d at 1267. Moreover, Named Plaintiff Gomez Carranza's release on bond obviates the need for him to seek injunctive relief.[5] *See, e.g.*, *Bravo v. Bd. of Cty. Comm'rs*, No. 08-CV-0010 WJ/KBM, 2009 WL 10706836, at *6 (D.N.M. Nov. 20, 2009) (finding no irreparable harm to named plaintiffs who had been released, since "the Court does not agree that the likelihood of the future incarceration of the named Plaintiffs at [the detention facility] is sufficient to qualify as 'presently threatened'" (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)).

Nevertheless, Named Plaintiffs argue that they are entitled to a presumption of satisfying the irreparable harm prerequisite merely because they allege constitutional violations. Doc. 35 at 25-26 (citing *McClendon v. City of Albuquerque*, 272 F. Supp. 2d 1250, 1258 (D.N.M. 2003)). The Tenth Circuit does not apply such a presumption, however. *See Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) ("[W]hile we must nonetheless engage in our traditional equitable inquiry as to the presence of irreparable harm in such a context [i.e., denial of the right to vote], we remain

_____

Tenth Circuit considers delay in seeking relief to be "one factor in the irreparable harm analysis," as it cuts against finding irreparable injury." *RoDa Drilling Co.*, 552 F.3d at 1211.

[5] The change in circumstances for both Named Plaintiffs since they filed the complaint calls into question whether they have standing to bring their individual claims for injunctive relief. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010) (noting that "named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future"). Moreover, at least one named plaintiff must have standing to bring claims on behalf of a class. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018) (noting that "a class action would be moot if *no* named class representative with an unexpired claim remained at the time of class certification" (emphasis added)).

cognizant that the violation of a constitutional right must weigh heavily in that analysis."). "[A] constitutional injury is irreparable in the sense that it cannot be adequately redressed by post-trial relief. However, that has no bearing on whether the alleged constitutional injury is *imminent*." *Pinson v. Pacheco*, 397 F. App'x 488, 492 (10th Cir. 2010) (emphasis added). Hence, Named Plaintiffs' "contention [they] need not make a showing of future injury is without merit." *Id.*

Even though a class has not been certified, Named Plaintiffs rely on injuries suffered by others to support their claim of irreparable harm. For example, Named Plaintiffs point to the costs incurred by detainees seeking to contact their attorneys. *See* Doc. 35 at 26. "It is well settled," however, "that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Schrier*, 427 F.3d at 1267 (internal quotation marks omitted). Moreover, costs incurred by attorneys in making phone calls, *see* Doc. 35 at 15, cannot constitute irreparable injury where neither the attorneys nor their organizations are parties. *See Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018) (noting that "injuries to third parties are not a basis to find irreparable harm.").

Next, Named Plaintiffs refer to removals of unnamed detainees that occurred after alleged difficulties contacting an attorney but make no effort to tie the removals to the communication issues.[6] *See* Doc. 35 at 26-28. They also refer to the unnamed detainee whose "sub-par" declaration obtained after over 2.5 hours of telephone time "may have contributed" to the denial of his request for reconsideration. *Id*. at 27.  However, Named Plaintiffs do not argue that any particular detainee is facing imminent, irreparable harm. In any event, removal by itself does not constitute irreparable harm. *See Nken*, 556 U.S. at 435 ("Although removal is a serious burden for many aliens, it is not

---

[6] Detainees who have already been removed would not be members of the class if certified. *See* Doc. 1 ¶ 84 (proposing a class definition of "[a]ll current and future adults who are or will be detained in immigration custody" at El Paso and Otero).

categorically irreparable."). "Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id*. Named Plaintiffs have not alleged that these avenues of relief are unavailable.

Named Plaintiffs also argue that for some Otero detainees, "the lack of telephone access has prolonged their time in detention." Doc. 35 at 27. Like removal, prolonged detention does not equate to irreparable harm because there are remedies for denial of the right to counsel through the administrative process. *See Aguilar v. ICE*, 510 F.3d 1, 18 (1st Cir. 2007) ("The remedies left open by section 1252(b)(9) are neither inadequate nor ineffective to protect the petitioners' rights. Each petitioner's right to counsel can be adequately addressed and effectively vindicated before an immigration judge (who can grant a continuance, order a change of venue, or take other pragmatic steps to ensure that the right is not sullied)." (citation omitted)). Furthermore, detainees awaiting removal can raise prolonged detention claims through a petition for habeas corpus. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

To the extent lack of telephone access has deprived detainees of their right to counsel or right to a full and fair hearing, resulting in prejudice at an immigration hearing, they must properly exhaust their claim before the Board of Immigration Appeals, and then through the petition-for-review process. *See J.E.F.M.*, 837 F.3d at 1033 (noting that "[r]ight-to-counsel claims are routinely raised in petitions for review filed with a federal court of appeals"); *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 188 (3d Cir. 2020) ("The court of appeals can redress any deprivation of counsel in the removal proceedings before the alien is removed."). That the exhaustion process may take a while "is not enough to establish irreparable harm or excuse

exhaustion. Virtually every non-citizen faces a delay in exhausting remedies before the Board, yet [c]ourts . . . across the country routinely hold them to the exhaustion requirement nonetheless." *Torres v. Decker*, No. 18-CV-10026 (VEC), 2018 WL 6649609, at *3 n.4 (S.D.N.Y. Dec. 19, 2018); *see also Arana v. Decker*, No. 20 CV 4104-LTS, 2020 WL 3833459, at *3 (S.D.N.Y. July 8, 2020) (internal quotation marks omitted) ("[I]f detention alone constituted irreparable harm, then the exception would swallow the rule that . . . administrative remedies must be exhausted before resorting to the federal courts."); *accord Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (noting that "permitting [the petitioner] to present his ineffective assistance of counsel claim for the first time before the district court would allow him to bypass the administrative scheme that is in place to deal with claims such as [his]"). Of course, where a detainee prevails in an immigration proceeding, *see* Doc. 35 at 27 (noting that for one Cuban detainee, "Santa Fe Dreamers successfully advocated for his release in July 2020"), there is no prejudice and therefore no due process violation. *See Michelson*, 897 F.2d at 468.

According to Named Plaintiffs, lack of privacy when making legal phone calls constitutes irreparable harm. Doc. 35 at 28. Named Plaintiffs cite no authority for this proposition, and in any case, there are privacy dividers in the facility. Moreover, the only harm they allege in their motion is the fear of the *attorneys* that their conversations with their clients were not private. *See id*. (citing Doc. 34-6 (Marjon Decl.) ¶¶ 4-6; Doc. 34-7 (Cerneka Decl.) ¶ 5). Named Plaintiffs cannot base their claim of irreparable harm on injuries to third parties, as noted above. *See Alcresta Therapeutics, Inc.*, 318 F. Supp. 3d at 326.

Named Plaintiffs also cite declarations relating to ACLU attorneys' efforts to communicate with clients regarding non-immigration proceedings, such as habeas corpus petitions to obtain

release due to COVID-19.[7] *See* Doc. 35 at 28-29; *see also* Doc. 34-2 (Sanchez Decl.) ¶¶ 3, 13; Doc. 34-5 (Goossen Decl.) ¶¶ 11, 17; Doc. 34-6 (Marjon Decl.) ¶¶ 2, 6-8. But Named Plaintiffs brought this case to vindicate "their constitutional, statutory, and regulatory rights *in their immigration proceedings*." Doc. 5 at 5 (emphasis added); *see also* Doc. 1 ¶¶ 95-99, 103-05, 109-10. The complaint does not mention the need to access to counsel for civil proceedings outside the immigration context such as these COVID-19 habeas cases. Consequently, the Court should disregard these declarations. *See P.L. v. U.S. Immigration & Customs Enf't*, No. 1:19-CV-01336 (ALC), 2020 WL 1233761, at *2 (S.D.N.Y. Mar. 13, 2020) (denying motion for reconsideration to reinstate purported bond hearing claims after dismissing case pursuant to Section 1252(b)(9), where "Plaintiffs' Complaint expressly concerns removal proceedings" and "fails to sufficiently articulate that Plaintiffs bring separate and independent claims concerning bond hearings").

Neither Named Plaintiff has shown he will suffer imminent, irreparable harm unless a preliminary injunction issues. Nor have Named Plaintiffs shown that any unnamed class members will suffer more than a "possibility of irreparable harm" in the absence of injunctive relief. *Winter*, 555 U.S. at 22. Consequently, this factor also weighs in the government's favor.

---

[7] It is unclear how the petitioners in these cases suffered harm from the alleged communication difficulties. The court denied their petitions because their conditions-of-confinement claims were not cognizable under 28 U.S.C. § 2241. *See Acosta Ortega v. United States Immigration & Customs Enf't*, No. 2:20-CV-00522-KWR-KBM, 2020 WL 4816373, at *4 (D.N.M. Aug. 19, 2020); *Betancourt Barco v. Price*, No. 2:20-CV-350-WJ-CG, — F. Supp. 3d —, 2020 WL 2099890, at *6 (D.N.M. May 1, 2020); *see also Betancourt Barco v. Price*, No. 2:20-CV-350-WJ-CG, 2020 WL 4692465, at *1 (D.N.M. Aug. 13, 2020) (clarifying that the court lacked jurisdiction over the habeas petition). No amount of communication would have changed the outcome. Moreover, the petitioners filed multiple declarations in these cases, which required telephone communication, as the declarations acknowledge. *See Acosta Ortega*, No. 2:20-CV-00522-KWR-KBM, Doc. 1-6, at 2; Doc. 23-3 at 5; *see also Betancourt Barco*, No. 2:20-CV-350-WJ-CG, Doc. 1-7, at 3; Doc. 1-8 at 2; Doc. 1-9 at 3; Doc. 24-6 at 5; Doc. 24-7 at 4.

III.   **Preliminary Relief Would Harm the Public Interest, and Named Plaintiffs Have Not Shown Their Potential Injury Outweighs the Government's.**

Finally, to prevail on their motion for preliminary relief, Named Plaintiffs must show "that the threatened injury outweighs the harms that the preliminary injunction will cause the government or that the injunction, if issued, will not adversely affect the public interest." *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020). "These factors 'merge' when the government is the opposing party." *Id*. at 990-91 (quoting *Nken*, 556 U.S. at 435).

IIRIRA replaced the former judicial-review scheme governing removal with a "'new (and significantly more restrictive) one in 8 U.S.C. § 1252.'" *Nken*, 556 U.S. at 423-24 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999) ("*AAADC*")). "The new review system substantially limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for review." *Id*. at 424 (citing, *inter alia*, Section 1252(b)(9)). "In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings." *Aguilar*, 510 F.3d at 9.

Named Plaintiffs seek to circumvent the streamlined review system, which channels claims arising out of removal proceedings to the courts of appeals, in order to obtain relief from the district court without exhausting their administrative remedies. Although Named Plaintiffs believe that the administrative burdens of the requested relief are *de minimis*, *see* Doc. 35 at 30, the true injury to the government if the injunctive relief is granted is the ability to Otero detainees to "undermine[] the streamlined removal proceedings" that Congress crafted in enacting IIRIRA. *Nken*, 556 U.S. at 424. "[C]ourts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible." *Id*. at 435.

If the Court accepts Named Plaintiffs' contention that their claims are cognizable, every missed phone call from an attorney could form the basis of a federal case, regardless of whether there was any effect on the detainee's removal proceedings. As the First Circuit remarked in *Aguilar*, "[s]uch claim-splitting—pursuing selected arguments in the district court and leaving others for adjudication in the immigration court—heralds an obvious loss of efficiency and bifurcation of review mechanisms. These are among the principal evils that Congress sought to avoid through the passage of section 1252(b)(9)." 510 F.3d at 10. Accordingly, Named Plaintiffs cannot show that the "preliminary injunction would cause no injury to Defendants." Doc. 35 at 30.

In addition to the public interest in preserving the integrity of the streamlined review process under IIRIRA, "there is a strong public interest in affording substantial deference to prison officials in managing the daily operations of a prison due to the unique nature, needs and concerns of the prison environment." *Pinson*, 424 F. App'x at 756 (*Turner v. Safley*, 482 U.S. 78, 84-85, (1987)). Therefore, "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotation marks omitted). Named Plaintiffs have failed to show that their desire for free legal calls of unlimited duration outweighs the government's interest in managing the daily operations at Otero, especially since they have not shown that they or anyone else is faced with an imminent threat of a constitutional violation. Hence, they cannot show that an injunction would serve the public interest by preventing a constitutional violation.

Although Named Plaintiffs claim that the relief they seek would merely "enforc[e] Defendants' own access standards," *id.*, Named Plaintiffs ask the Court to provide relief above and beyond what is set forth in the 2011 PBNDS or COVID-19 Pandemic Response Requirements.

For example, Named Plaintiffs demand "[a]n order that Defendants make all legal calls, including legal intake calls, free of charge and without time restrictions." Doc. 34 at 2. However, the 2011 PBNDS require only that "[d]etainees shall be able to make free calls to the ICE/ERO-provided list of free legal service providers." 2011 PBNDS § 5.6.II.7, Ex. A1, at 1; *see also id*. at 3-4 (§§ 5.6.V.E, 5.6.V.E.3). As for attorneys not on the list, detainees shall be permitted "to make *direct <u>or free</u>* calls" to them. *Id*. at 3 (§ 5.6.V.E) (emphasis added). Moreover, the 2011 PBNDS provide that a "facility may place reasonable restrictions on the hours, frequency, and duration" of calls to legal representatives. *Id*. at 4 (§ 5.6.V.F.1); *see also* Renteria Decl. ¶ 5.

Several courts have recognized that there is no requirement in the 2011 PBNDS that all phone calls to all attorneys must be free of cost to the detainee. *See SPLC*, 2020 WL 3265533, at *34 (ordering the defendants to "comply with the optimal requirements in PBNDS 5.6, Telephone Access," which "includes ensuring . . . that calls to legal representatives such as Plaintiff are *direct <u>or free</u>, see* PBNDS 5.6(V)(E)" (emphasis added); *Lyon v. U.S. Immigration & Customs Enf't*, 171 F. Supp. 3d 961, 990 (N.D. Cal. 2016) (noting that the plaintiffs argued that their requested relief mirrored the 2011 PBNS requirements, including "providing *direct <u>or free</u>* calls to . . . legal representatives . . . (2011 PBNDS at § 5.6.V.E)" (emphasis added)).

Furthermore, the Pandemic Response Requirements note that "ICE continues to explore opportunities to enhance attorney access while legal visits are being impacted," which "*may* include . . . [a]dding all immigration attorneys of record to the Talton Pro-bono platform." Ex. A2 at 2 (emphasis added). There is another suggestion that "[w]hen detainees must be housed in spaces used for administrative segregation or solitary confinement," ICE should "*[c]onsider* allowing increased telephone privileges without a cost barrier to maintain mental health and connection with others while isolated." *Id*. at 3 (emphasis added). There is no *requirement* that ICE provide all

detainees with free legal phone calls of unlimited duration to any provider. Hence, Named Plaintiffs' argument that they are only seeking to hold ICE to its own requirements is false.

To show entitlement to disfavored preliminary relief, Named Plaintiffs must satisfy a heightened burden as to each of the prerequisites. They have failed to meet this burden. The Court should therefore deny their motion for a preliminary injunction.

## IV.   If the Court Grants Any Relief, It Must Be Tailored to Apply Only to the Named Plaintiffs Unless the Court Grants the Motion for Class Certification.

If the Court concludes that preliminary relief is appropriate, the relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs. *See generally Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Because the Court has not certified a class, the scope of any injunctive relief must take into account the fact that there are only two Named Plaintiffs before the Court. Consequently, "the injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Everhart v. Bowen*, 853 F.2d 1532, 1539 (10th Cir. 1988), *rev'd on other grounds sub nom. Sullivan v. Everhart*, 494 U.S. 83 (1990) ("Absent a class certification, the district court should not have treated the suit as a class action by granting statewide injunctive relief, and accordingly should have tailored its injunction 'to affect only those persons over [whom] it has power.'" (quoting *Zepeda*, 735 F.2d at 727 (alteration in original; citation omitted)).

Here, given that Named Plaintiff Gomez Carranza is no longer detained, Named Plaintiff Torres Jauregui is the only person properly before the Court to whom the Court can grant injunctive relief. *See Salazar v. San Juan Cty. Det. Ctr.*, No. CV 15-0417 JB/LF, 2016 WL 335447, at *2 n.3, *52 (D.N.M. Jan. 15, 2016) (holding that injunctive relief was moot as to prisoners who had been released or had died, since "the Court cannot meaningfully fashion an injunctive remedy for

Plaintiffs that are dead or not currently incarcerated at the San Juan County Detention Center"). If the Court grants a preliminary injunction before class certification, it should tailor the remedy to prevent future, imminent harm to Named Plaintiff Torres Jauregui. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (noting that the "remedy must be tailored to redress the plaintiff's particular injury"). Defendants recognize that other putative class members may benefit incidentally from such relief. *See Salazar*, 2016 WL 335447 at *3 n.4.

## CONCLUSION

For the foregoing reasons, the Court should deny Named Plaintiffs' Motion for a Preliminary Injunction.

Respectfully submitted.

JOHN C. ANDERSON
United States Attorney


*/s/ Christine H. Lyman 9/9/2020*
CHRISTINE H. LYMAN
Assistant United States Attorney
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
505-346-1532
Christine.Lyman@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2020, Defendants filed through the United States District Court CM/ECF System the foregoing document, causing it to be served by electronic means on all counsel of record.

*/s/ Christine H. Lyman 9/9/2020*
CHRISTINE H. LYMAN
Assistant United States Attorney