R. David Hosp
ORRICK, HERRINGTON & SUTCLIFFE, LLP
222 Berkeley St. Ste 2000
Boston, MA  02116
Telephone: (617) 880-1886
Facsimile: (617) 880-1801
Email: dhosp@orrick.com

René A. Kathawala
Paige Pavone
Lauren D. Allen
ORRICK, HERRINGTON & SUTCLIFFE, LLP
51 West 52nd Street
New York, NY  10019
Telephone: (212) 506-3604
Facsimile: (212) 506-5151
Email: ppavone@orrick.com

Katherine Melloy Goettel (Admitted *Pro Hac Vice*)
AMERICAN IMMIGRATION COUNCIL
1331 G Street, NW, Suite 200
Washington, DC 20005
Tel.: (202) 507-7552
Email: kgoettel@immcouncil.org

*Attorneys for Plaintiffs* (additional counsel in signature block)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| FRANKLIN GOMEZ CARRANZA and RUBEN TORRES JAUREGUI,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Case No. 20-CV-00424 (KG) (KRS)<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 1

    A. The Court Should Grant Class Certification Before Ruling on the Preliminary Injunction or, in the Alternative, Provisionally Certify a Class. ......... 1

    B. Irreparable and Imminent Harm Flow From Defendants' Constitutional Violations of Plaintiffs' Rights. ............................................................................ 2

    C. In their Opposition, Defendants Do Not Refute Several Critical Allegations in the Preliminary Injunction. ............................................................ 5

    D. Despite Defendants' Disingenuous Assertion that ICE is in Compliance with the 2011 PBNDS, Current Telephone Access is Insufficient and Violates the Law. ................................................................................................... 7

        1. Defendants Monitor and Record Calls, Trampling on Attorney-Client Privilege. ................................................................................... 7

        2. Defendants Do Not Comply with the 2011 PBNDS Requirement for Free Calls to Pro Bono Counsel, Unlawfully Restricting Access to Counsel in Violation of the INA and Constitution. ............................. 8

            a. *ICE should provide individuals free calls to pro bono legal service providers.* ............................................................................ 8

            b. *Contrary to Defendants' assertion, no court has held that the 2011 PBNDS do not provide for free calls to all pro bono legal representatives.* ......................................................... 10

        3. Restrictive Legal Call Duration Severely Compromises Attorney Representation. ....................................................................................... 11

III. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aracely, R. v. Nielsen*,
   319 F. Supp. 3d 110 (D.D.C. 2018) .................................................................................. 5

*Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*,
   565 F.3d 769 (10th Cir. 2009) ........................................................................................ 4

*Damus v. Nielsen*,
   313 F. Supp. 3d 317 (D.D.C. 2018) .................................................................................. 2

*Fish v. Kobach*,
   840 F.3d 710 (10th Cir. 2016) ........................................................................................ 3

*Innovation Law Lab v. Nielsen*,
   310 F. Supp. 3d 1150 (D. Or. 2018) .............................................................................. 10

*Jarpa v. Mumford*,
   211 F. Supp. 3d 706 (D. Md. 2016) ................................................................................ 4

*Kikumura v. Hurley*,
   242 F.3d 950 (10th Cir. 2001) ........................................................................................ 3

*Meyer v. Portfolio Recovery Assocs.*,
   LLC, 707 F.3d 1036 (9th Cir. 2012) ................................................................................ 2

*Nken v. Holder*,
   556 U.S. 418 (2009) ....................................................................................................... 4

*R.I.L-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) .................................................................................. 3

*Ramirez v. ICE*,
   310 F. Supp. 3d 7 (D.D.C. 2018) .................................................................................... 4

*S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.*,
   No. CV 18-760 (CKK), 2020 WL 3265533 (D.D.C. June 17, 2020) ......................... 5, 7, 12

*Sanusi v. Dep't of Homeland Sec.*,
   No. 06-CV-2929 (SJ), 2010 U.S. Dist. LEXIS 146004 (E.D.N.Y. Dec. 1,
   2010) ............................................................................................................................ 10

*Topps v. Bowen*,
   No. CIV. 85-NC-0187W, 1986 WL 15777 (D. Utah Jan. 13, 1986) ................................ 2

Case 2:20-cv-00424-KG-KRS   Document 39   Filed 09/23/20   Page 4 of 18

*Torres v. United States Dep't of Homeland Sec.*,
    2020 WL 3124216 (C.D. Cal. Apr. 11, 2020) .................................................................. 6, 11

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981) ................................................................................................................ 4

## I. INTRODUCTION

Defendants deny individuals at the Otero County Detention Processing Center ("Otero") meaningful telephone access necessary to exercise their constitutional and statutory rights to communicate with legal representatives and the outside world. In their opposition ("Opp.") to Plaintiffs' Motion for a Preliminary Injunction ("PI Mem."), Defendants belittle the very idea of telephone access, flippantly dismissing the access-to-counsel violations Immigration and Customs Enforcement ("ICE") perpetuates when they refuse to schedule legal calls; refuse to provide individuals with free calls to pro bono counsel; and refuse to respect privacy and confidentiality. Instead, Defendants posit that any attorney with a face mask should opt for in-person legal visitation during a pandemic; that abbreviated, disjointed, non-confidential calls of fewer than ten minutes are sufficient; that class-wide grievances can be discounted by focusing solely on the claims of one Named Plaintiff; and that the substantial allegations and evidence brought forth in Plaintiffs' request for a preliminary injunction can be rebutted by rehashing jurisdictional arguments.[1] Defendants' Opposition fails to undermine the factual and legal arguments supporting the need for class-wide injunctive relief to ensure meaningful telephone access at Otero in compliance with the Constitution, immigration statutes, and ICE's own policies.

## II. ARGUMENT

**A. The Court Should Grant Class Certification Before Ruling on the Preliminary Injunction or, in the Alternative, Provisionally Certify a Class.**

Defendants center their objections on the facts and circumstances of Named Plaintiff Ruben Torres Jauregui—an accounting which Plaintiffs' dispute below—and virtually ignore

---

[1] Rather than rehashing those arguments here, Plaintiffs incorporate by reference their arguments in response to Defendants' Motion to Dismiss. *See* ECF No. 29, Mem. in Opp. to Dfts' Mot. to Dismiss.

1

that the Court has before it a fully briefed motion for class certification, Dkt. Nos. 4-9, 24, 28, and that, therefore, the entire class's allegations and injuries are at issue. The Court can and should grant class certification along with the preliminary injunction. *See, e.g., Topps v. Bowen*, No. CIV. 85-NC-0187W, 1986 WL 15777 (D. Utah Jan. 13, 1986) (simultaneously granting class certification and preliminary injunction). In the alternative, the Court could provisionally certify the class for purposes of adjudicating the pending preliminary injunction motion. *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1041–43 (9th Cir. 2012) (affirming provisional class certification for purposes of preliminary injunction); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 343 (D.D.C. 2018) (granting provisional class certification and preliminary injunction). While the Court must find that all the requirements of Rule 23 have been met in order to provisionally certify a class, "[i]ts analysis is tempered . . . by the understanding that such certification may be altered or amended before the decision on the merits." *Damus*, 313 F. Supp. at 329 (quotation omitted). For the reasons set out in Plaintiffs' Motion for Class Certification, Dkt. No. 4, such certification is warranted here.

**B.    Irreparable and Imminent Harm Flow From Defendants' Constitutional Violations of Plaintiffs' Rights.**

Plaintiffs and class members face multiple forms of irreparable injury that cannot be redressed at the conclusion of this litigation: violation of the right to petition the government under the First Amendment, the right to a full and fair hearing under the Due Process Clause and the Immigration and Nationality Act (INA), prolonged detention, and the prospect of removal with an inability to pursue their claims from abroad.

Defendants disagree that the Tenth Circuit holds that no further inquiry is necessary once Plaintiffs show a constitutional injury, but it is clear that the Tenth Circuit weighs constitutional injury heavily towards a finding of irreparable harm. In *Fish v. Kobach*, the Tenth Circuit

recognized, "'When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" 840 F.3d 710, 752 (10th Cir. 2016) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (internal citations omitted)). Thus, while the Court must "nonetheless engage in our traditional equitable inquiry," the Tenth Circuit affirmed that constitutional claims are analyzed differently, and that the constitutional violation must "weigh heavily" on the analysis. *Fish*, 840 F.3d at 752. The Tenth Circuit in *Fish* did not depart from the oft-followed presumption that constitutional injury is, by its nature, irreparable. *Id.* The rationale behind this presumption is that constitutional violations cannot be remedied *post hoc*. *See Kikumura*, 242 F.3d at 963 ("Because the relief available to Plaintiff after trial would not adequately compensate him for the alleged violations of his religious rights, the district court committed legal error in holding Plaintiff had not satisfied the irreparable injury prong of the preliminary injunction analysis."). But regardless of the weight of that presumption, Plaintiffs can show multiple instances of irreparable and imminent harm. *See* PI Mem. at 20.

Defendants contort Plaintiffs' harm as *monetary* loss. Opp. at 16. That is incorrect; Plaintiffs never allege *monetary* harm alone as the irreparable harm they face. Rather, the cost of telephone calls often prohibits or substantially limits individuals' ability to access attorneys, infringing upon First and Fifth Amendment rights and unlawfully prolonging detention. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("[T]he harm from detention pursuant to an unlawful policy cannot be remediated after the fact."). The harm is not their dwindling commissary account, but that the cost of telephone calls impedes their right to contact their attorneys.[2]

---

[2] Tellingly, Defendants do not address two of three instances where individuals were removed from the United States before they were able to conduct a legal intake due to lack of funds. *See* PI Mem. at 20-21. In the third instance, Defendants hold Plaintiffs to an unreasonable standard of proving that the lack of telephone access was the but-for cause of a class member's unsuccessful attempt to reopen his case – a standard inappropriate at the

Defendants take the remarkable position that lack of attorney access during fast-tracked immigration proceedings causes no irreparable harm. While Defendants correctly cite *Nken v. Holder*, 556 U.S. 418, 435 (2009), for the proposition that removal does not categorically constitute irreparable harm, that case did not involve the additional trampling of rights present here – an inability to use the telephone to obtain an attorney or talk to one's attorney or legal representative during a pandemic. Another critical difference is that the *Nken* petitioner was pursuing judicial review of his removal order, while Plaintiffs are mostly in expedited removal proceedings, a process they cannot access abroad. *See* 8 U.S.C. § 1158(a)(1) (a non-citizen "who is physically present in the United States or who arrives in the United States" may apply for asylum); *Sadhvani v. Holder*, 596 F.3d 180, 183 (4th Cir. 2009) ("[T]he BIA did not abuse its discretion in denying relief based on the statutory requirement that one must be present in the United States to be eligible for asylum."); *see also Nken*, 556 U.S. at 447–48 ("IIRIRA specifically contemplated that most aliens wishing to contest final orders of removal would be forced to pursue their appeals from abroad.").

Defendants erroneously swat away the idea that prolonged detention "does not equate to irreparable harm," ignoring the wealth of case law that has held the opposite. *See Ramirez v. ICE*, 310 F. Supp. 3d 7, 31 (D.D.C. 2018) ("[D]eprivations of physical liberty are the sort of actual and imminent injuries that constitute irreparable harm."); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 711 (D. Md. 2016) (finding the plaintiff was likely to suffer irreparable harm "because the harm is loss of liberty, [which] is quintessentially the kind of harm that cannot be undone or totally remedied through monetary relief.") Plaintiffs face imminent, irreparable harm on a daily

---

preliminary injunction stage. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("A party thus is not required to prove his case in full at a preliminary-injunction hearing. . . ."); *see also Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (same).

basis on account of their inability to obtain and access their attorneys who can help them move for a bond hearing, file a parole request, expedite their removal proceedings, or file a habeas corpus petition. Each of these actions could shorten their detention. *See Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 155 (D.D.C. 2018) (recognizing that "the major hardship posed by needless prolonged detention is a form of irreparable harm") (internal citations and quotations omitted).

Ironically, Defendants suggest that a preliminary injunction is improper because Plaintiffs can file habeas corpus petitions, but then suggest that the Court should disregard Plaintiffs' evidence that habeas counsel was denied access to Otero. Opp. at 17, 19. When habeas attorneys tried to arrange free, confidential legal calls, ICE told those attorney that it would "no longer set up calls" and that Talton was "already providing short free calls for detainees on a limited basis." *See* PI Mem., Ex. B, Decl. of Maria Martinez Sanchez at ¶ 10. The possibility of a habeas claim is no substitute for a preliminary injunction, especially where habeas counsel cannot speak to individuals at Otero and the preliminary injunction seeks to remedy that. Plaintiffs suffer immediate, irreparable harm that can only be remedied through a preliminary injunction.

C. **In their Opposition, Defendants Do Not Refute Several Critical Allegations in the Preliminary Injunction.**

Plaintiffs' Motion for a Preliminary Injunction raised numerous allegations, supported by multiple declarations, many of which Defendants do not refute, including:

- Remote legal visitation is the safest means of legal communication during a pandemic, even if ICE permits in-person legal visits under certain circumstances.[3] *See* PI Mem. at 1; Opp. at 3 n.1, 6-7. Nor do Defendants dispute that many legal services providers have policies restricting in-person legal visits. *See* Supplemental Decl. of Heidi Cerneka at ¶ 2 ("Since the start of the pandemic, Las Americas has had a policy of severely restricting staff from conducting in-person visits at immigration detention facilities to protect the

---

[3] *See also S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.,* No. CV 18-760 (CKK), 2020 WL 3265533, at *2 (D.D.C. June 17, 2020) ("Due to the emergence and spread of COVID-19, in-person legal visitation is no longer viable as a primary vehicle of communication between legal representatives and detained individuals at these Facilities.").

- safety of staff and their families, as well as the safety of our clients and staff at the detention facilities.")[4]

- ICE publicly encourages detention facilities to offer non-contact legal visitation, such as Skype or teleconference, and that these technologies have not been made available at Otero. *See* PI Mem. at 2-3.

- ICE has refused to implement a procedure to schedule legal or legal intake calls at Otero; that ICE does not reliably or promptly respond to attorney requests to arrange calls with their clients; and ICE has flatly refused to schedule calls between attorneys and clients at Otero. *See* PI Mem. at 3-5.

- ICE does not allow detained individuals to call free legal service providers on the ICE/ERO list on anything but one main line. Additionally, Defendants do not dispute that some calls to free legal service providers on the ICE/ERO list automatically cut off after 5 or 10 minutes. *See* PI Mem. at 8.

- Individuals are forced to choose between using the no-cost ten-minute calls (when available) to contact their counsel or their families. Defendants do not dispute that using back-to-back ten-minute calls leads to frequent interruptions from warning messages and from automatic disconnection. *See* PI Mem. at 10.

- The phones and tablets frequently malfunction and that, between June 10-24, 2020, no reliable service was available at all. *See* PI Mem. at 12.

- ICE has already implemented relief similar to that requested by Plaintiffs in other lawsuits elsewhere in the country. *See* PI Mem. at 25.

- ICE has publicly recognized that curtailment of in-person visitation has a substantial impact on detained individuals' mental health and, thus, expanded telephone access is appropriate. *See* PI Mem. at 3.

Defendants' failure to respond to these allegations is compelling evidence of their complete disregard for Plaintiffs' right to counsel, trampling on their statutory and constitutional rights. *See Torres v. United States Dep't of Homeland Sec.,* 2020 WL 3124216, at *6 (C.D. Cal. Apr. 11, 2020) ("Defendants' non-responsiveness to Plaintiffs' factual assertions is telling.").

---

[4] Defendants were "unclear why [Attorney Cerneka] has been unable to visit Named Plaintiff Torres Jauregui in person at Otero if telephone communications are so unreliable," despite "apparently obtain[ing] a face mask." Opp. at 3, n.1.  Throughout the pandemic, Attorney Cerneka "lived with someone who is at high risk of suffering serious illness if that person were to contract COVID-19." Supplemental Decl. of Heidi Cerneka at ¶ 2.

D.  **Despite Defendants' Disingenuous Assertion that ICE is in Compliance with the 2011 PBNDS, Current Telephone Access is Insufficient and Violates the Law.**

The Court has several filings before it[5] in which Plaintiffs demonstrate that they are likely to succeed on the merits and how ICE fails to comply with the 2011 Performance Based National Detention Standards ("2011 PBNDS").[6] In light of Defendants' misleading statements in its Opposition, Plaintiffs provide more detail of those failures herein.

1.  **Defendants Monitor and Record Calls, Trampling on Attorney-Client Privilege.**

Assistant Field Officer Director Jose A. Renteria's declaration evinces the inconsistencies and confusion that detained individuals and their attorneys face in the process to secure confidential legal calls at Otero. In one paragraph, AFOD Renteria asserts that "[a]bsent a court order, staff may not monitor phone calls made in reference to legal matters," but in the very next paragraph, he writes, "Detainees who wish to have an unmonitored call with their attorney must submit a request with the number of the attorney." *See* Rentiera Decl. at ¶ 8. Ample testimony from Named Plaintiffs and attorneys representing detained individuals demonstrates that all calls (including legal calls) placed from the housing unit phones are, by default, recorded. *See* Estrella Cedillo Decl. at ¶ 17, Dkt. Entry No.34-1; Joachim Marjon Decl. at ¶ 4, 5, Dkt. Entry No. 34-6; Heidi Cerneka Decl. at ¶ 5, Dkt. Entry No. 34-7; David Jackson Decl. at ¶ 8, Dkt. Entry No. 34-8. The process for a detained individual to "submit a request with the number of the attorney" for Talton, the Otero phone service provider, to verify and subsequently add to a list of "attorney numbers" has never been clear. *See* Renteria Decl. at ¶ 9. If such a procedure is available, ICE

---

[5] *See generally* Complaint, Dkt. Entry No. 1; Brief in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, Dkt. Entry No. 5; and Plaintiffs' Opposition to Defendants' Motion to Dismiss, Dkt. Entry No. 29.

[6] Even if ICE were in compliance with the PBNDS (which it is not), compliance with the PBNDS is not the *sine qua non* of legality under the INA and First and Fifth Amendments. *See S. Poverty Law Ctr*, 2020 WL 3265533, at *26 ("While the PBNDS provides a helpful touchstone, whether Defendants are in compliance with PBNDS does not indicate whether the conditions are punitive.").

has never made it known. *See* Supplemental Decl. of Estrella Cedillo at ¶ 3 ("[N]o ICE official has ever mentioned a procedure by which detained individuals may request that his or her attorney's number can be identified as an 'attorney number' with Talton. No ICE officer ever responded to any of our email requests for confidential calls to explain that detained individuals could arrange for confidential calls themselves."); Second Supplemental Decl. of David Jackson at ¶ 2 (same). Rather, contrary information has circulated at Otero. *See* Supplemental Decl. of Estrella Cedillo at ¶ 5 (explaining that an Otero detention officer informed Attorney Cedillo's client that attorneys (not clients) had to make requests for confidential legal calls). Attorneys working with individuals at Otero have struggled mightily through informal procedures to have their names included on the Talton list, and ICE has ignored many of these attempts. Furthermore, despite AFOD Renteria's assertions, calls from the housing units are not private. *Id.* at ¶ 6 ("In my experience, clients are often able to remain on the phone with me and easily speak to individuals nearby. The privacy panels provide very little real privacy.")

**2.** **Defendants Do Not Comply with the 2011 PBNDS Requirement for Free Calls to Pro Bono Counsel, Unlawfully Restricting Access to Counsel in Violation of the INA and Constitution.**

Defendants acknowledge that the 2011 PBNDS require that individuals "shall be able to make free calls to the ICE/ERO-provided list of free legal service providers and that calls to all other attorneys be "direct or free." *See* Opp. at 22; 2011 PBNDS § 5.6.II.7, § 5.6.V.E. However, ICE systematically denies individuals at Otero free calls to pro bono counsel, including legal representatives working with the legal service providers on the ICE/ERO-provided list, in violation of the INA and the Constitution.

a. *ICE should provide individuals free calls to pro bono legal service providers.*

The parties do not dispute that calls to pro bono legal service providers should be free. *See* Opp. at 22. The Executive Office for Immigration Review ("EOIR") maintains a list of pro

bono legal service providers. *See* List of Pro Bono Legal Service Providers ("EOIR List"), available at https://www.justice.gov/eoir/file/probonofulllist/download (last accessed Sept. 14, 2020). Calls to providers on this list must be free. *See* 2011 PBNDS § 5.6.II.7 ("Detainees shall be able to make free calls to the ICE/ERO-provided list of free legal service providers…"); ICE Guidance on COVID-19, available at https://www.ice.gov/coronavirus (last accessed September 14, 2020) ("All detainees are afforded telephone access and can make calls to the ICE-provided list of free legal service providers and consulates at no charge to the detainee or the receiving party.")  Defendants agree that these calls must be free. Opp. at 22 (citing to 2011 PBNDS § 5.6).[7]  Yet ICE denies Plaintiffs free calls to their counsel employed by or volunteering with the pro bono legal service providers on the EOIR List. *See* Decl. of Max Brooks, Dkt. Entry No. 34-3 (discussing difficulties in arranging free calls with clients at Otero, despite serving as an attorney for Las Americas Immigrant Advocacy Center ("Las Americas"), a pro bono legal service provider on the EOIR List); Decl. of Imelda Maynard, Dkt. Entry No. 34-4 (discussing difficulties in arranging free calls with clients at Otero that would last more than five minutes, despite serving as an attorney for Catholic Charities of Southern New Mexico, a pro bono legal service provider on the EOIR List); Decl. of Heidi Cerneka, Dkt. Entry No. 34-7 (discussing the lack of free legal calls with her client, Named Plaintiff Ruben Torres Jauregui, despite serving as an attorney for Las Americas); Decl. of David Jackson, Dkt. Entry No. 34-8 (discussing the difficulties in arranging free legal intake calls at Otero, despite working for Las Americas); Decl. of Margaret Brown Vega, Dkt. Entry No. 34-9 (discussing how most calls "are paid calls in

Case 2:20-cv-00424-KG-KRS   Document 39   Filed 09/23/20   Page 13 of 18

bono legal service providers. *See* List of Pro Bono Legal Service Providers ("EOIR List"), available at https://www.justice.gov/eoir/file/probonofulllist/download (last accessed Sept. 14, 2020). Calls to providers on this list must be free. *See* 2011 PBNDS § 5.6.II.7 ("Detainees shall be able to make free calls to the ICE/ERO-provided list of free legal service providers…"); ICE Guidance on COVID-19, available at https://www.ice.gov/coronavirus (last accessed September 14, 2020) ("All detainees are afforded telephone access and can make calls to the ICE-provided list of free legal service providers and consulates at no charge to the detainee or the receiving party.")  Defendants agree that these calls must be free. Opp. at 22 (citing to 2011 PBNDS § 5.6).[7]  Yet ICE denies Plaintiffs free calls to their counsel employed by or volunteering with the pro bono legal service providers on the EOIR List. *See* Decl. of Max Brooks, Dkt. Entry No. 34-3 (discussing difficulties in arranging free calls with clients at Otero, despite serving as an attorney for Las Americas Immigrant Advocacy Center ("Las Americas"), a pro bono legal service provider on the EOIR List); Decl. of Imelda Maynard, Dkt. Entry No. 34-4 (discussing difficulties in arranging free calls with clients at Otero that would last more than five minutes, despite serving as an attorney for Catholic Charities of Southern New Mexico, a pro bono legal service provider on the EOIR List); Decl. of Heidi Cerneka, Dkt. Entry No. 34-7 (discussing the lack of free legal calls with her client, Named Plaintiff Ruben Torres Jauregui, despite serving as an attorney for Las Americas); Decl. of David Jackson, Dkt. Entry No. 34-8 (discussing the difficulties in arranging free legal intake calls at Otero, despite working for Las Americas); Decl. of Margaret Brown Vega, Dkt. Entry No. 34-9 (discussing how most calls "are paid calls in

---

[7] The 2011 PBNDS cites to the "ICE/ERO free legal service provider list" and the ICE Guidance on COVID-19 cites to the "ICE-provided list of free legal service providers."  Plaintiffs are unable to locate an ICE-provided list other than the EOIR List of Pro Bono Legal Service Providers, and thus assume that Defendants, the 2011 PBNDS, and the ICE Guidance on COVID-19 are referring to the EOIR List, formally known as the "List of Free Legal Service Providers."  *See* 80 Fed. Reg. 59503 (Oct. 1, 2015). *See also* 2011 PBNDS at 5.7.J.13 ("ICE/ERO shall provide each facility the official list of local free legal service providers, updated quarterly by the local DOJ Executive Office for Immigration Review.").

which individuals call me using their commissary funds," despite working with Catholic Charities of Southern New Mexico); Decl. of Gomez Carranza, Dkt. Entry No. 6 (discussing severe restrictions on the ability to speak with his attorney, employed by Las Americas, because "I have no money."); Decl. of Torres Jauregui, Dkt. Entry No. 7 (discussing having "little communication" with his Las Americas attorney because "we have to pay for phone calls.").

Legal representatives volunteering with the pro bono legal service providers on the EOIR List, regardless of whether they are engaged full time as a volunteer or ordinarily work in private practice, should also receive free calls from their clients. Pro bono legal service providers depend on volunteers and private practice attorneys to represent detained individuals. To deny clients that have engaged the services of an EOIR List member free legal calls, simply because the client engages a volunteer rather than a staff attorney from the organization, is contrary to the plain text and spirit of the 2011 PBNDS, and violates the INA and First and Fifth Amendments.

b.  *Contrary to Defendants' assertion, no court has held that the 2011 PBNDS do not provide for free calls to all pro bono legal representatives.*

Defendants' assertion that "[s]everal courts have recognized that there is no requirement in the 2011 PBNDS that all phone calls to all attorneys must be free of cost to the detainee" is misleading. Opp. at 22. In fact, as far as Plaintiffs are aware, no court has discussed whether the language included in the 2011 PBNDS precludes free legal calls to all pro bono counsel. The cases cited by the government merely quote the 2011 "direct or free" language without discussion. If anything, courts have implied that all legal calls to pro bono counsel must be free. *See Innovation Law Lab v. Nielsen,* 310 F. Supp. 3d 1150, 1166 (D. Or. 2018) (ordering the government "to install at least four telephone lines in each unit where immigration detainees are held, with each line capable of placing free direct calls to legal service providers."); *Sanusi v. Dep't of Homeland Sec.,* No. 06-CV-2929 (SJ), 2010 U.S. Dist. LEXIS 146004, at *13 n.8

(E.D.N.Y. Dec. 1, 2010) (describing an earlier iteration of the PBNDS as "requir[ing] local calls to a detainee's attorney to be provided free of charge."); *Torres,* 2020 WL 3124216, at *29 (ordering that ICE "allow free, reasonably private legal calls on unrecorded and unmonitored telephone lines").

### 3. Restrictive Legal Call Duration Severely Compromises Attorney Representation.

In their Opposition, Defendants attempt to quantify the length of a legal call required for sufficient attorney-client communication. It is not the government's place to determine the threshold number of minutes of legal preparation that meets constitutional and statutory access-to-counsel standards. Defendants otherwise offer no evidence to rebut Plaintiffs' substantial evidence that the limits on call duration at Otero interfere with attorney representation.

Defendants claim that individuals at Otero receive 13 ten-minute calls at no cost, which expire at week's end if not used.[8] Defendants posit that 13 ten-minute opportunities to speak with counsel are sufficient. Plaintiffs' evidence shows they are not due to their disjointed, interrupted nature, disruptive background noise, and lack of confidentiality and privacy. PI Mem. at 9-10. Moreover, there is no one-size-fits-all number of minutes that satisfies constitutional and statutory access-to-counsel mandates given the variation in defendant circumstances.[9]

Defendants also allege that Named Plaintiff Torres Jauregui received sufficient telephone access, citing to his immigration court hearing transcript. *See* Opp. at 2-5. This characterization

---

[8] Plaintiffs dispute that individuals detained at Otero receive 13 ten-minute no-cost calls per week. *See* PI Mem. at 9, n.5. Defendants have put forth no evidence that these calls are in fact available.

[9] As an example, Defendants express confusion as to "why [a] declaration obtained from [a] detainee was 'sub-par,' despite over 2.5 hours in phone time with him." Opp. at 10. Defendants ignore evidence that the legal representative—who was simultaneously attempting a legal intake while also preparing a declaration with life-or-death consequences—"was not able to ask some questions which may have strengthened the declaration." Brooks Decl. at ¶ 8(d). In another instance, Defendants assert that Attorney Rosa de Jong "had little difficulty establishing regular communication with an Otero detainee in July 2020." Opp. at 10, n.3. In fact, Attorney de Jong's client had to pay for most of the calls, which were potentially monitored and suffered from background noise. Decl. of Rosa de Jong at ¶ 3. The client was given just one legal phone call while in the hospital.

fails to consider the context surrounding Mr. Torres Jauregui's immigration hearings. As stated in the Complaint, Attorney Cerneka was unable to contact her client in the time leading up to his hearing on April 1, 2020 and, as a result, it had to be rescheduled, prolonging Mr. Torres Jauregui's detention an additional month. *See* Supplemental Decl. of Heidi Cerneka at ¶ 3; *see also* Compl. at ¶¶ 79-82. Because of her inability to contact her client, Attorney Cerneka developed a "work-around" that required Mr. Torres Jauregui to pay for the call and the calls were not confidential. *See* Supplemental Decl. of Heidi Cerneka at ¶ 4. Attorney Cerneka did not request a continuance for the June 30, 2020 hearing to avoid prolonging Mr. Torres Jauregui's confinement any longer.  *See id*. at ¶ 5.

In sum, the abbreviated, limited, and disjointed telephone communications that Defendants claim are adequate do not meet the constitutional standard for due process. Tellingly, Defendants' quantification does not comport with the 2011 PBNDS, which limits restrictions on legal calls. *See* 2011 PBNDS at § 5.6.F.1 ("A facility may neither restrict the number of calls a detainee places to his/her legal representatives, nor limit the duration of such calls by rule of automatic cut-off…"). *See also S. Poverty Law Ctr.*, 2020 WL 3265533, at *24 (finding that an effective one-hour per week cap on legal calls violated the Fifth Amendment). By establishing a call cap that by definition bears no relationship to the legal needs of the case, Defendants are interfering with Plaintiffs' right to counsel under the INA and the First and Fifth Amendments.

## III.     CONCLUSION

For the reasons stated above and those in their opening papers, Plaintiffs respectfully request that this Court grant class-wide preliminary injunctive relief.

Respectfully Submitted,

Dated:  September 23, 2020                ORRICK, HERRINGTON, & SUTCLIFFE LLP

/s/ R. David Hosp

R. David Hosp
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley St. Ste 2000
Boston, MA  02116
Telephone: (617) 880-1886
Facsimile: (617) 880-1801
Email: dhosp@orrick.com

René A. Kathawala
Paige Pavone
Lauren D. Allen
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Telephone: (212) 506-3604
Facsimile: (212) 506-5151
Email: ppavone@orrick.com

Katherine Melloy Goettel (Admitted *Pro Hac Vice*)
AMERICAN IMMIGRATION COUNCIL
1331 G Street, NW, Suite 200
Washington, DC 20005
Telephone:  (202) 507-7552
Email: kgoettel@immcouncil.org

Emma C. Winger (Admitted *Pro Hac Vice*)
AMERICAN IMMIGRATION COUNCIL
1318 Beacon Street, Suite 18
Brookline, MA 02446
Tel.:  (617) 505-5375
Email: ewinger@immcouncil.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, a true and correct copy of the foregoing PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION was served with the Clerk of the Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

Dated:  September 23, 2020          By:     /s/ Paige Pavone