## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FRANKLIN GOMEZ CARRANZA, et al.,

      Plaintiffs,

v.                                      No. 2:20-CV-424 KG/KRS

UNITED STATES IMMIGRATION and
CUSTOMS ENFORCEMENT, et al.,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiffs' Motion to Certify Class, (Doc. 4);

Defendants' Motion to Dismiss, (Doc. 23); and Plaintiffs' Motion for Preliminary Injunction,

(Doc. 34). The motions have been fully briefed. (Docs. 24, 28, 29, 31, 38, 39). On October 23,

2020, the presiding judge referred the motions to the undersigned to conduct hearings, perform

legal analysis, and recommend an ultimate disposition. (Doc. 42). The Court set a hearing on

the motions for November 17, 2020, (Doc. 43); however, the parties requested three

continuances, (Docs. 45, 47, 50). Subsequently, at the request of the parties, the Court held a

settlement conference on January 19, 2021, which was unsuccessful. (Doc. 59). The Court then

heard oral argument on Defendants' Motion to Dismiss on March 10, 2021. (Doc. 63). Having

considered the parties' briefing (including supplemental authorities and evidence filed by

Plaintiffs in Documents 61 and 66), the arguments of counsel at the hearing, the record of the

case, and relevant law, the Court recommends GRANTING Defendants' Motion to Dismiss for

lack of jurisdiction and DENYING as moot Plaintiffs' Motions to Certify Class and for

Preliminary Injunction.

## I.     Background

Plaintiffs are immigration detainees who were held in the Otero County and El Paso

Processing Centers while they had removal proceedings pending in El Paso Immigration Court.

(Doc. 1) at 6.  Plaintiffs claim they did not have adequate access to free, confidential phone calls

with attorneys at the processing centers.  Plaintiffs seek to bring a class action on behalf of

themselves and "all current and future adult immigration detained persons who are or will be

held in [Immigration and Customs Enforcement] custody in El Paso or Otero and to obtain an

order from this Court enjoining the policies, practices, and omissions that are preventing

Plaintiffs from realizing their constitutional, statutory, and regulatory rights, including the

promise of due process in immigration proceedings." *Id.* at 5-6, ¶10.  Since the filing of their

Complaint, both Plaintiffs have been released from the processing centers.  Nevertheless,

Defendants concede Plaintiffs' claims are not moot because the case is filed as a putative class

action. *See* (Doc. 23) at 1, n.2 (citing *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)

(where named plaintiffs' claims become moot before certification, class certification can relate

back to the filing of the complaint); (Doc. 63) at 2.

Plaintiffs assert three claims:

1.   Violation of their right to representation of counsel contrary to the Fifth Amendment

     Due Process Clause, 8 U.S.C. §§ 1362 and 1229a(b)(4)(A), 5 U.S.C. § 555(b), and 8

     C.F.R. §§ 1003.16(b) and 1292.5(b);

2.   Violation of their right to full and fair hearings contrary to the Fifth Amendment Due

     Process Clause and 8 U.S.C. §§ 1229a(b)(4)(B) and 1226(a); and

3.   Violation of their First Amendment right to petition the government for redress of

     grievances.

2

(Doc. 1) at 27-29.  For relief, Plaintiffs ask the Court to order Defendants to: (1) comply with the

Performance-Based National Detention Standards ["PBNDS"]; (2) provide free, confidential

legal phone calls, and reasonably accommodate non-legal calls for detainees who are indigent;

(3) establish an adequate process for immigration attorneys to schedule legal calls; (4) provide

private, unmonitored, unrecorded calls with attorneys; (5) provide a quiet place for legal calls

and calls that do not have poor sound quality; (6) provide the opportunity to penetrate automated

voicemail trees and leave voicemails when making legal calls; (7) provide notice of

communication options available to detainees; and (8) accommodate non-English speakers,

illiterate detainees, and detainees with hearing and speech disabilities that impact their access to

legal calls.  *Id.* at 29-30.  Plaintiffs also move for certification of a class and for preliminary

injunction as to all of the relief sought in their Complaint.  (Docs. 4 and 34).

Defendants move to dismiss Plaintiffs claims for three reasons: First, Defendants argue

Plaintiffs lack standing to bring claims relating to injuries they have not personally suffered.

Second, Defendants contend this Court does not have jurisdiction over Plaintiffs' claims under 8

U.S.C. § 1252(b)(9) because they arise from Plaintiffs' removal proceedings and, thus, may only

be reviewed by the Board of Immigration Appeals and the courts of appeals.  And third,

Defendants move to dismiss Plaintiffs' claims because they failed to allege prejudice as a result

of Defendants' actions.  (Doc. 23).  Because Defendant's Motion to Dismiss implicates this

Court's jurisdiction, the Court will address it first.  *See Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.");

*Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289,

1301 (10th Cir. 1980) ("A federal court must in every case, and at every stage of the proceeding,

satisfy itself as to its own jurisdiction, and the court is not bound by the acts or pleadings of the

3

parties."); *CNSP, Inc. v. City of Santa Fe*, 2018 WL 1737549, at *2 (D.N.M.), aff'd, 753 Fed.

Appx. 584 (10th Cir. 2018) ("[A] court ... retains an independent obligation to ensure, even sua

sponte, that it has jurisdiction over the claims before it").

## II.   Legal Standard

Defendants seek to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6).  Courts apply different standards to a motion to dismiss based on lack of subject matter

jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule

12(b)(6).  *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012).  When

faced with a motion to dismiss which relies on both aspects of Rule 12, a court must determine

whether it has subject matter jurisdiction under Rule 12(b)(1) before addressing the merits of the

claims under a Rule 12(b)(6) analysis.  *State v. Nat'l Indian Gaming Comm'n*, 151 F. Supp. 3d

1199, 1208 (D. Kan. 2015) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take the

form of facial attacks on the complaint or factual attacks on the accuracy of its allegations.  *City

of Albuquerque v. U.S. Dept. of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (quoting *Ruiz v.

McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)).  "A facial attack on the complaint's

allegations as to subject matter jurisdiction questions the sufficiency of the complaint," and "[i]n

reviewing a facial attack on the complaint, a district court must accept the allegations in the

complaint as true."  *Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995).  However, when a

party goes beyond allegations contained in the complaint and challenges the facts upon which

subject matter jurisdiction depends, "a district court may not presume the truthfulness of the

complaint's factual allegations."  *Id.*  "In such instances, a court's reference to evidence outside

the pleadings does not convert the motion to a Rule 56 motion."  *Id.* at 1002-03.  When ruling on

a factual attack on subject matter jurisdiction, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt*, 46 F.3d at 1003).

Courts may exercise jurisdiction only when specifically authorized to do so and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee Cty. Bd. of Cty. Comm'rs*, 895 F.Supp. 279, 280 (D. Kan. 1995) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)); *see also* Fed. R. Civ. P. 12(h)(3), *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Plaintiffs bear the burden of showing that jurisdiction is proper and must demonstrate that the case should not be dismissed. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction. *Marcus v. Kan. Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

III. **Discussion**

The Immigration and Nationality Act ("INA") authorizes noncitizens to obtain direct review of final orders of removal in the courts of appeals. 8 U.S.C. § 1252(a)(1). The INA also provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section," and "[e]xcept as otherwise provided in this section, no court shall have jurisdiction … to review such an order or such questions of law and fact." 8 U.S.C. § 1252(b)(9). The United States Supreme Court has explained that these two subchapters read together mean that "a noncitizen's various challenges

5

arising from the removal proceeding must be 'consolidated in a petition for review and considered by the courts of appeals.'" *Nasrallah v. Barr*, 140 S.Ct. 1683, 1690 (2020) (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)) (describing Section 1252(b)(9) as a "zipper clause" which consolidates judicial review of a final order of removal into one action in the courts of appeals). "By consolidating the issues arising from a final order of removal, eliminating review in the district courts, and supplying direct review in the courts of appeals, the Act expedites judicial review of final orders of removal." *Id.*

The United States Supreme Court has cautioned not to construe Section 1252(b)(9) too broadly in that it does not strip district courts of jurisdiction over questions that are "too remote" or collateral to the removal process. *Jennings v. Rodriguez*, 138 S.Ct. 830, 840-41 (2018). For example, the Supreme Court has held that this provision does not bar jurisdiction over a habeas petition challenging the government's prolonged detention of an immigrant without a bond hearing, or over claims "based on allegedly inhumane conditions of confinement." *Id.* However, the Supreme Court has also held that Section 1252(b)(9)'s reach extends to legal or factual challenges to the decision to seek removal and the process by which removability will be determined. *Dept. of Homeland Sec. v. Reg. of Univ. of Cal.*, 140 S.Ct. 1891, 1907 (2020). The Third Circuit has further defined the limit of Section 1252(b)(9)'s reach as where the relief sought cannot meaningfully be provided alongside review of a final order of removal. *See E.O.H.C. v. Sec'y U.S. Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (explaining jurisdiction is not stripped for "now-or-never" claims); *see also Jennings*, 138 S.Ct. at 840 (holding that district courts are not stripped of jurisdiction to hear habeas claims that immigrants have not been afforded bond hearings, because if those claims are tied to a final order of removal, they are "effectively unreviewable").

6

### A.  Right to Counsel

Plaintiffs' first claim is that Defendants violated their right to counsel contrary to the Fifth Amendment Due Process Clause, 8 U.S.C. §§ 1362 and 1229a(b)(4)(A), 5 U.S.C. § 555(b), and 8 C.F.R. §§ 1003.16(b) and 1292.5(b).  Defendants argue this claim is barred under Section 1252(b)(9) because it is tied to Plaintiffs' removal proceedings.  (Doc. 23) at 11-15.  Plaintiffs respond that this claim does not arise from their removal proceedings but, instead, "arise[s] from Defendants' policies and practices regarding telephone access in El Paso and Otero—a condition of confinement that unduly interferes with access to counsel and leads to prolonged detention." (Doc. 29) at 19.

There is no Sixth Amendment right to government-provided counsel in removal proceedings.  *See Michelson v. I.N.S.*, 897 F.2d 465, 467 (10th Cir. 1990).  However, under the Fifth Amendment immigrants are afforded "minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner."  *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (citation omitted).  The INA also provides that in removal proceedings, an immigrant "shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings."  8 U.S.C. § 1229a(b)(4)(A); *see also* 8 C.F.R. §§ 1003.16(b) and 1292.5(b).

The Tenth Circuit has not addressed whether an immigrant's right-to-counsel claim arises from removal proceedings or whether it is collateral to or independent of the removal process. Several courts considering this question have held that Section 1252(b)(9) bars district courts from reviewing immigrants' right-to-counsel claims.  For example, in *Aguilar*, the First Circuit stated that "[b]y any realistic measure, the alien's right to counsel is part and parcel of the removal proceeding itself."  *Aguilar v. ICE*, 510 F.3d 1, 13 (1st Cir. 2007)).  The court reasoned

7

that an immigrant's right to counsel "possesses a direct link to, and is inextricably intertwined

with, the administrative process that Congress so painstakingly fashioned." *Id.* Noting that

right-to-counsel claims frequently arise in removal proceedings, the court determined such

claims are not sufficiently separate from removal proceedings to be considered either

"independent" or "collateral." *Id.* (citing *Michel v. INS*, 206 F.3d 253, 258 (2nd Cir. 2000)).

The court further reasoned that allowing immigrants to bring right-to-counsel claims directly in

district court would result in the type of fragmented litigation that Congress sought to avoid in

enacting Section 1252(b)(9). *Id.* Therefore, the First Circuit held that the plaintiffs' due process

and statutory right-to-counsel claims arose from their removal proceedings and were subject to

Section 1252(b)(9)'s jurisdiction channeling provision. In contrast, the court held that the

plaintiffs' substantive due process claims relating to their right to make decisions as to the care,

custody, and control of their children did not arise from removal proceedings and were allowed

to proceed. *Id.*

Similarly, in *J.E.F.M.* the Ninth Circuit held that the district court lacked jurisdiction to

hear a claim that immigrants were denied government-appointed counsel in removal

proceedings. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032-33 (9th Cir. 2016) (holding that right-to-

counsel claims "arise from removal proceedings" and "are bound up in and an inextricable part

of the administrative process"). And more recently, in *National Immigration Project*, the D.C.

district court held that it did not have jurisdiction to hear right-to-counsel claims relating to

inadequate telephone access at immigration detention facilities because those claims were "part

of the process by which removability will be determined." *Nat'l Immig. Proj. v. Exec. Ofc. of

Immig. Rvw.* 456 F.Supp.3d 16, 29-30 (D.D.C. 2020) (citation omitted); *see also Mochama v.

Zwetow*, 2017 WL 36363, *6 (D. Kan.) (finding district court lacked jurisdiction to hear

immigration detainee's claim that he was not provided counsel for removal proceedings); *Rivas Rosales v. Barr*, 2020 WL 1505682, at \*7-9 (N.D. Cal.) (dismissing right-to-counsel claims relating to use of video teleconferencing for asylum hearings because they "pertain specifically to and arise from … removal proceedings"); *P.L. v. U.S. ICE*, 2019 WL 2568648, \*3-4 (S.D.N.Y.) (district court lacked jurisdiction to hear claim that ICE policy allowing only video appearances in immigration proceedings interfered with right to counsel); *Alvarez v. Sessions*, 338 F.Supp.3d 1042, 1048-49 (N.D. Cal. 2018) (district court lacked jurisdiction to hear Fifth Amendment right-to-counsel claim based on ICE transferring detainees to out-of-state facilities); *Wheeler v. Unknown Named Agents of ICE*, 2016 WL 6126260, at \*3 (C.D. Cal.) (dismissing right-to-counsel claim alleging that detainee in solitary confinement could not access her attorney before asylum hearing).

Conversely, some cases have concluded that certain right-to-counsel claims are collateral to removal proceedings so there is no jurisdictional bar under Section 1252(b)(9). *See, e.g., E.O.H.C.*, 950 F.3d at 187-88 (district court has jurisdiction to hear substantive due process right-to-counsel claim based on ICE's "return to Mexico" policy, but finding no jurisdiction to hear right-to-counsel claims based on immigration statutes); *SPLC v. U.S. DHS*, 2020 WL 3265533, \*14-17 (D.D.C.) (finding "substantive due process claim alleging punitive conditions of confinement is not barred by section 1252(b)(9)" so district court has jurisdiction to consider immigration detainees' claims that limitations imposed due to COVID-19 interfered with their right to counsel); *Arroyo v. U.S. DHS*, 2019 WL 2912848, \*3 (C.D. Cal.) (district court has jurisdiction to hear claims that immigration detainees' Fifth Amendment and statutory rights to counsel are violated when they are transferred outside of Los Angeles county); *Torres v. U.S. DHS*, 411 F.Supp.3d 1036, 1047-48 (C.D. Cal. 2019) (district court has jurisdiction to hear

conditions-of-confinement claims that immigration detainees were denied right to counsel by facility restricting access to legal phone calls); *Cancino-Castellar v. Nielsen*, 338 F.Supp.3d 1107, 1116-17 (S.D. Cal. 2018) (claim that delay in appearing before immigration judge for initial hearing was not barred by § 1252(b)(9)).

Plaintiff encourages the Court to follow the holdings in the cases finding that right-to-counsel claims are collateral to removal proceedings. (Doc. 29) at 20-22. However, the claims in those cases are distinguishable from Plaintiffs' claims. In *E.O.H.C.*, for example, the Third Circuit explained that the principle from Section 1252(b)(9)'s jurisdiction bar is whether the claim could be raised in a different proceeding; if not, then Section 1252(b)(9) does not bar the district court from jurisdiction to hear the claim. 950 F.3d at 185-86 (describing test for whether a claim arises from a removal proceeding as: "If not now, when? If the answer would otherwise be never, then § 1252(b)(9) poses no jurisdictional bar."). Using this "now-or-never" test, the Third Circuit held that the petitioners' Fifth Amendment right-to-counsel claim was not barred because the claim was based on the government's decision to return the petitioners to Mexico under the Migrant Protection Protocols while deciding whether to grant asylum or remove them to Guatemala. *Id.* at 187. Because this claim "ar[ose] not from the efforts to remove them to Guatemala, but from those to return them to Mexico in the meantime," and the "constitutional harm … could not be remedied after a final order of removal," the Court concluded the claims must be heard now or never.

In contrast, Plaintiffs' allegations that they were denied adequate access to counsel to help them prepare for their immigration proceedings can be remedied after a final order of removal by pursuing the appeals process to the court of appeals. *See J.E.F.M.*, 837 F.3d at 1033 ("Right-to-counsel claims are routinely raised in petitions for review filed with a federal court of

appeals.").  Because immigration judges cannot remedy the prison conditions relating to telephone access, Plaintiffs argue that denial of jurisdiction in this Court would leave Plaintiffs without a means to obtain meaningful review of their claims.  (Doc. 29) at 24.  While Plaintiffs are correct that immigration judges are not able to remedy prison conditions, immigration judges can and do control removal proceedings by allowing parties additional time to discuss matters with counsel and pursue evidence.  *See Aguilar*, 510 F.3d at 18 ("Each petitioner's right to counsel can be adequately addressed and effectively vindicated before an immigration judge (who can grant a continuance, order a change of venue, or take other pragmatic steps to ensure that the right is not sullied.") (citation omitted).  Indeed, Plaintiffs here sought and received continuances in their immigration proceedings.  *See* (Doc. 1) at 21-22, ¶¶75, 81.  Therefore, Plaintiffs' claim that their removal proceedings were impacted by their lack of access to counsel directly involves the removal process and is precisely what Section 1252(b)(9)'s jurisdiction-channeling provision covers.  *See Aguilar*, 510 F.3d at 18 (holding that due process claims alleging "difficulties in calling witnesses and in presenting evidence at the removal proceedings" fall within Section 1252(b)(9)); *Nat'l Immig. Project*, 456 F.Supp.3d at 29-30 ("Plaintiffs' access-to-counsel and due process claims arise from the course of removal hearings, placing them within § 1252(b)(9)'s broad jurisdictional bar.").

Plaintiffs also argue that they suffered prolonged detention because they were unable to access counsel or prepare for their removal hearings due to Defendants' restrictions on telephone access.  (Doc. 29) at 24.  They contend that waiting for a final removal order "will not remedy the harm Plaintiffs continue to suffer unnecessarily languishing in immigration detention because of inadequate telephone access." *Id.*  A claim for prolonged immigration detention, however, is properly brought in a habeas proceeding.  *See* 28 U.S.C. § 2241(c)(3) (providing that habeas

corpus review is available if an immigration detainee is "in custody in violation of the constitution or law or treaties of the United States"); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001) (discussing limits on judicial review of claims of prolonged immigration detention and concluding that habeas proceedings remain available as a forum for immigration detainees to raise statutory and constitutional challenges to immigration detention).  In fact, Plaintiff Jauregui brought a separate habeas case in this court in which he pursued a claim that his detention while seeking asylum exceeded constitutional limits. *See Jauregui v. Wolf, et al.*, Civ. No. 20-917 KWR/LF.  Accordingly, the Court finds that the Third Circuit's "now-or-never" exception to Section 1252(b)(9)'s jurisdiction bar does not apply in this case because Plaintiffs' claims can be pursued in the INA's appeal process to the courts of appeals or in a habeas proceeding.

Plaintiffs also encourage the Court to follow the reasoning of *Torres* where the district court found it had jurisdiction over immigration detainees' right-to-counsel claims.  411 F.Supp.3d at 1047-49.  In that case, however, the court emphasized that the plaintiffs "take pains to tailor their claims only to the conditions of their removal-related detention, and do not challenge the legal sufficiency of any procedural aspect of their removal proceedings."  *Id.* at 1048-49 (stating the plaintiffs' claims "do not hinge on events at any particular removal proceeding" and that the plaintiffs "make extensive allegations regarding conditions so restrictive as to prevent them from forming any attorney-client relationship to begin with").  Plaintiffs here do not tailor their allegations to conditions-of-confinement claims and instead base their claims on their removal proceedings.  *See* (Doc. 1) at 20-24, ¶¶70-83.  Specifically, Plaintiff Carranza states that problems contacting and talking with his attorney made it difficult for him to "prepare for his final removal hearing" and caused the hearing to be delayed for two months, and Plaintiff Jauregui alleges he had difficulty preparing for "his final merits hearing on

his asylum petition" which caused him to seek a continuance.  (Doc. 1) at 20-21, ¶¶ 73, 75, 79,

81.  Plaintiffs do not provide any other reason they sought legal advice other than non-specific

assertions that immigrants often need legal counsel for claims unrelated to their removal

proceedings.  *See, e.g.,* (Doc. 1) at 9 ("In an effort to seek release on bond, detained individuals

often seek legal representation.").  Such statements do not provide a basis for finding that the

named Plaintiffs sought legal advice for anything other than their removal proceedings.  *See*

*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class

certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the

case as a whole—that unnamed plaintiffs might have a case or controversy is irrelevant."); *c.f.*

*SPLC*, 2020 WL 3265533, at \*17 (emphasizing jurisdiction was proper because the plaintiffs'

conditions of confinement claim included allegations that plaintiffs' right to counsel was

impacted "in proceedings other than removal proceedings, such as bond and release

proceedings").[1]

     Nevertheless, Plaintiffs state their claims "have *everything* to do with conditions of

confinement," and that "[a]ny relief awarded to Plaintiffs would have no impact on any removal

order."  (Doc. 29) at 20-21.  "It is well-settled law that prisoners who wish to challenge only the

conditions of their confinement, as opposed to its fact or duration, must do so through civil rights

lawsuits filed pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*."  *Standifer*

*v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011); *see also Palma-Salazar v. Davis*, 677 F.3d

1031, 1035 (10th Cir. 2012) ("In this circuit, a prisoner who challenges the fact or duration of his

---

[1] The Court notes that Plaintiff Jauregui's attorney filed a habeas petition challenging the
length of his detention, and yet he does not assert that access to counsel affected that proceeding.
*See* (Doc. 1) filed in Civ. No. 20-917.

confinement and seeks immediate release or a shortened period of confinement, must do so

through an application for habeas corpus.  In contrast, a prisoner who challenges the conditions

of his confinement must do so through a civil rights action.”); *Rodas Godinez v. U.S. Immig. &*

*Customs Enf’t*, 2020 WL 3402059, at *2 (D.N.M.) (dismissing immigration detainee’s

conditions-of-confinement claim because it was not brought in a civil rights lawsuit).  As stated

above, Plaintiffs’ claims center on their access to counsel for their immigration proceedings.

Indeed, Plaintiffs’ definition for the class they seek to represent is for immigration detainees who

are prevented “from realizing their constitutional, statutory, and regulatory rights, including the

promise of due process in immigration proceedings.”  (Doc. 1) at 6, ¶10.  Additionally,

Plaintiffs’ reliance on immigration statutes and regulations as the basis for their claims further

ties the claims to removal proceedings.  *See E.O.H.C.*, 950 F.3d at 187-88 (holding that the right

to counsel provided by immigration statutes “is tied to the removal proceedings themselves”).

   For these reasons, the Court finds that Plaintiffs have not asserted a conditions-of-

confinement claim sufficiently independent of their removal proceedings to avoid the reach of

Section 1252(b)(9).  Accordingly, the Court disagrees that awarding Plaintiffs relief for this

claim would not impact their removal proceedings.  To the contrary, Plaintiffs state that “[a]s a

result of Defendants’ conduct, many Plaintiffs who would be eligible to remain in the United

States are deported,” and that Defendants’ conduct prevents some Plaintiffs from “accept[ing] a

removal order earlier in the process if they were able to obtain legal consultation over the

telephone.”  (Doc. 1) at 5, ¶9.c-d.  Therefore, Plaintiffs’ right-to-counsel claim calls into question

the constitutionality of their removal proceedings.

   Based on the foregoing, the Court finds that Section 1252(b)(9) applies to Plaintiffs’

right-to-counsel claim.  As articulated in their Complaint, Plaintiffs’ right-to-counsel claim “is

part and parcel of the removal proceeding itself," and ignoring the channeling provisions of

Section 1252(b)(9) in this case "would result in precisely the type of fragmented litigation that

Congress sought to forbid." *Mochama*, 2017 WL 36363, at *6 (citing *Aguilar*, 510 F.3d at 13).

Because Plaintiffs' claim is based on access to counsel for their removal proceedings, they are

challenging "part of the process by which their removability will be determined." *Jennings*, 138

S.Ct. at 841.  Therefore, Section 1252(b)(9) channels their claims to the review process before

the courts of appeals.  This includes Plaintiffs' challenges to the facilities' policies and

procedures regarding phone access because Plaintiffs' allegations are linked to Plaintiffs'

removal proceedings.  *See J.E.F.M.*, 837 F.3d at 1035 (holding the INA "channel[s] review of all

claims, including policies-and-practices challenges, through the [petition for review] process

whenever they arise from removal proceedings") (citation omitted); *Aguilar*, 510 F.3d at 14

("[P]attern and practice claim is not a freestanding cause of action but merely a method of

providing an underlying legal violation.").  Plaintiffs' attempt to bring a class action does not

change this outcome because Plaintiffs cannot raise claims on behalf of potential class members

that they themselves cannot assert.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352

(2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press."); *J.E.F.M.*,

837 F.3d at 1038 ("We recognize that a class remedy arguably might be more efficient than

requiring each applicant to file a [petition for review], but that is not a ground for ignoring the

jurisdictional statute."); *Aguilar*, 510 F.3d at 14 (holding that immigration detainees cannot

"dodge the channeling machinery of section 1252(b)(9) simply by draping individual claims in

the mantle of a class action," and that "courts must always be wary of strategic behavior

designed to sidestep exhaustion requirements").

15

Accordingly, the Court finds that it does not have jurisdiction over Plaintiffs' right-to-counsel claim brought under the Fifth Amendment and immigration statutes because it arises from their removal proceedings and is thus barred by Section 1252(b)(9).  In addition, Plaintiffs' right-to-counsel claim under the Administrative Procedure Act fails because Plaintiffs have only asserted claims relating to their immigration proceedings, and "immigration proceedings … are not governed by the APA."  *Argestani v. I.N.S.*, 502 U.S. 129, 133 (1991) (citation omitted); 5 U.S.C. § 555(b).  The Court, therefore, recommends dismissing Plaintiffs' right-to-counsel claim without prejudice for lack of jurisdiction. *See Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal … must be without prejudice.") (citation omitted).

### B.  Right to Full and Fair Hearings

Next, Defendants move to dismiss Plaintiffs' claim that Defendants have violated their right to full and fair hearings contrary to the Fifth Amendment Due Process Clause and 8 U.S.C. § 1229a(b)(4)(B) and 1226(a).  (Doc. 23) at 17-19.  This claim asserts that "Defendants have violated Plaintiffs' right to a full and fair hearing by denying and severely restricting Plaintiffs' ability to make telephone calls to gather information and obtain evidence in support of their immigration cases."  (Doc. 1) at 28, ¶106.

As with Plaintiffs' right-to-counsel claim, this claim is inextricably linked to their removal proceedings.  Section 1252(b)(9)'s jurisdictional bar extends to claims relating to the process by which immigrations detainees' removability will be determined.  *See Jennings*, 138 S.Ct. at 841.  Accordingly, several courts have found Section 1252(b)(9) bars district court jurisdiction over similar claims alleging infringement to detainees' right to full and fair hearings.

16

*See Aguilar*, 510 F.3d at 18 ("To the extent that [the plaintiffs] arguably have raised procedural

due process claims above and beyond their right-to-counsel claims—such as their vaguely

articulated plaints about difficulties in calling witnesses and in presenting evidence at the

removal proceedings—we find that section 1252(b)(9) mandates their exhaustion."); *P.L.*, 2019

WL 2568648, at *8 ("Plaintiffs' access-to-counsel and due process claims arise from the course

of removal hearings, placing them within § 1252(b)(9)'s broad jurisdictional bar."); *Vetcher v.*

*Sessions*, 316 F.Supp.3d 70, 77 (D.D.C. 2018) (dismissing claims relating to lack of access to

law library materials at detention facility as "inextricably linked to the order of removal" so the

district court had no jurisdiction pursuant to Section 1252(b)(9)).  The Court, therefore, finds that

Section 1252(b)(9) bars jurisdiction for Plaintiffs' right to full and fair hearings claim because it

arises from their removal proceedings, and the Court recommends this claim be dismissed

without prejudice.

### C.  Right to Petition the Government

Finally, Defendants move to dismiss Plaintiffs' third claim that Defendants violated their

First Amendment right to petition the government for redress of grievances.  (Doc. 23) at 19-20.

Plaintiffs do not respond to this portion of the Motion to Dismiss.  Several courts have held that

immigrants have a First Amendment right to petition for asylum.  *See, e.g., Maldonado Perez v.*

*I.N.S.*, 865 F.2d 328, 332 (D.C. Cir. 1989); *Haitian Refugee Cntr. v. Smith*, 676 F.2d 1023, 1036

(5th Cir. 1983).  Nevertheless, this claim is inextricably linked to Plaintiffs' removal proceedings

and Plaintiffs do not allege that their right-to-petition claim relates to any other proceeding.  *See*

(Doc. 1) at 28, ¶110 (claiming "Defendants have violated Plaintiffs' right to petition the

government by denying and severely restricting the telephonic access necessary to seek legal

representation and obtain documents and evidence in support of their applications for

immigration benefits").  Accordingly, the Court finds that Section 1252(b)(9)'s jurisdictional bar applies to Plaintiffs' First Amendment claim and recommends this claim be dismissed without prejudice.

## IV.    Conclusion

For the foregoing reasons, the Court finds it does not have jurisdiction over Plaintiffs' claims pursuant to 8 U.S.C. § 1252(b)(9).

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss, (Doc. 23), be **GRANTED** and Plaintiffs' claims be **DISMISSED without prejudice**.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' Motion for Class Certification, (Doc. 4), and Motion for Preliminary Injunction, (Doc. 34), be **DENIED as moot.**



KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE


**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION.  A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION.  IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**